ANDREW F. HASTINGS, Receiver, etc., Respondent, v. DANIEL DREW et al., Appellants.

The property of every corporation is to be regarded as a trust fund for the payment of its debts; the creditors of the corporation have a lien thereon and may follow it into the hands of the directors or stockholders.

Where, therefore, the property of a corporation has been divided among its stockholders, a judgment creditor, after return of an execution against the corporation unsatisfied, may maintain an action, in the nature of a creditor's bill against a stockholder, to reach whatever was so received by him.

In such an action the judgment against the corporation is at least *prima facie* evidence of the liability of the corporation.

*Miller* v. *White* (50 N. Y., 137); *McMahon* v. *Macy* (51 id., 155), distinguished.

Certain of the directors and stockholders of the N. J. S. N. Co. entered into an arrangement, that a steamboat and an interest in another belonging to said corporation should be sold at auction, bid off by one of their number for their benefit, and that of other stockholders joining in the arrangement; those who did not participate were to receive their proportionate share of the sum bid. The sale was accordingly made in February, 1864, but the sum bid was not paid, and the boat was, thereafter, run the same as before. In July, 1864, through the negligence of those in charge of the steamboat, a collision occurred between her and another vessel. In March, 1865, the steamboat was sold, and by an instrument executed in the name of said company by its president transferred to another corporation. *Held*, that the facts authorized a finding that the sale was not a real one, but that the title remained in said company; and that it was liable for the negligence.

After the accident, but before the actual sale of the steamboat, defendant V. sold his stock, subject to all claims against it, to defendant E. *Held*, that E. took the stock so purchased subject to its proportionate share of plaintiff's claim and was properly charged therewith.

(Argued December 9, 1878; decided January 21, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was originally brought by The Security Insurance Company, as a judgment creditor of The New Jersey

Steam Navigation Company, against defendants, who were directors and stockholders of said corporation, to enforce the payment of said judgment out of property of the corporation alleged to have come into defendants' hands and to have been appropriated by them.

The present plaintiff, having been appointed receiver of the original plaintiff, was substituted in its stead.

The court found, substantially, the following facts, among others :

Said New Jersey Steam Navigation Company was a corporation organized under the laws of the State of New Jersey, whose charter expired February 28, 1869, and except by expiration of its charter, it was never dissolved, and no proceedings were had for winding up its affairs.   Defendants were, in 1863, and thereafter, directors and stockholders of said company.   Prior to September, 1863, the company owned a line of steamboats, plying on the waters of Long Island Sound, known as the " Stonington Line," and also a steamboat, the " C. Vanderbilt," and a three-fourths interest in the " Francis Skiddy," running on the Hudson river, between New York and Troy, known as the " Troy Line."   In September, 1863, defendant, as the board of directors of said company, determined to, and did, sell the boats of the Stonington Line, dividing the proceeds among the stockholders, each receiving a dividend of between one hundred and seventy-five to one hundred and ninety per cent upon the par value of his stock. It was further determined by said defendants, as such board of directors, that the boats of the Troy line should be put up for sale at public auction, and it was, at a meeting of said board of directors, arranged by and between the defendants, that defendant Jacob H. Vanderbilt should, at such sale, bid off the said steamboats for the defendants, and such others of the stockholders, as should participate with them in the said arrangement ; and that said defendants, and such other participating stockholders, should continue to be interested in such steamboats, in the proportions of the stock held by them respectively, and that the stockholders, who did not

participate in such purchase, should receive, and be paid in money, the proportionate part of the sum to be bid for the said steamboats, to which they were respectively entitled as stockholders. In pursuance of said arrangement, the said " C. Vanderbilt," and four-fifths of said " Francis Skiddy," were advertised for sale, and were, on the 15th day of February, 1864, struck off to Vanderbilt, who, in pursuance of said arrangement, bid for the same the sum of $85,000. The " C. Vanderbilt " was, at the time of said sale, enrolled in the New York Custom House, in the name of The New Jersey Steam Navigation Company, as the sole owner thereof; no bill of sale or other instrument of transfer was then, or at any time, made, executed or delivered by said company to Vanderbilt, nor was any money or other consideration paid by him to said company. After the sale the said steamboat remained in the same possession as before, and no act or thing was done, by which any change of possession took place, the several defendants remaining interested therein, in the proportions of their interests, as stockholders, in said New Jersey Steam Navigation Company; defendants paid to such of the stockholders as did not participate with them in the aforesaid arrangement their proportionate shares of the sum of $85,000, so bid for said steamboats. No money passed between said defendant Vanderbilt and the directors and stockholders participating in said arrangement, and the earnings of the boats were, after February 15, 1864, as they had been before that time, kept on deposit, in the name of the " Troy Line," and the defendants Drew and Vanderbilt respectively continued to have the charge and management of the financial affairs, and the business of the said steamboats, and the defendant Drew continued to do acts as president of the said New Jersey Steam Navigation Company. The " C. Vanderbilt " continued to be employed in the said " Troy Line," and remained so enrolled in the New York Custom House until the 30th day of March, 1865, on which day a bill of sale of said steamboat, without date, subscribed and executed by Daniel Drew, as president of the said company, was acknowl-

edged by him as such president, and was recorded in the said New York Custom House on the day following. In the month of September, 1864, the defendant Vanderbilt sold to the defendant Englis his stock and all his interest in the said boat, and subsequently had nothing to do with her disposition. In January, 1865, an action was commenced by the said Security Insurance Company, as plaintiff, against the said New Jersey Steam Navigation Company, as defendant, for a cause of action arising on the 14th day of July, 1864, being for damages sustained by said Security Insurance Company, by reason of the sinking of a canal boat called the "A. D. Merry," on the Hudson river, near Troy, alleged in the complaint to have been caused by the negligence and fault of the persons in charge of said steamboat "C. Vanderbilt." All of the defendants in this action had knowledge, at the time of its occurrence, of the said collision, the company appeared in said action and answered the complaint, the answer of said company being verified by the defendant Drew, as president of said company, by an affidavit made on the 11th day of March, 1865, in which he swore that he was on that day the president of said New Jersey Steam Navigation Company. Judgment was duly entered in said action upon a verdict in favor of plaintiff, for the sum of $6,004.37, on the 11th day of May, 1868. The said judgment was duly docketed, and execution against the property of defendant was duly issued thereon and returned unsatisfied. In and by an act of the Legislature of the State of New Jersey, passed April 15, 1846, it is provided that, upon the dissolution of any corporation, the directors or managers of its affairs, at the time of the dissolution, shall be trustees of the creditors, and shall apply its assets and property to the payment of the outstanding debts of the corporation.

The court held, in substance, that defendants, except Vanderbilt, were liable in the proportion which the number of shares of stock in said New Jersey Steam Navigation Company held by them respectively bore to the whole number of shares, defendant Englis being held liable for the pro-

portionate share upon the stock bought of Vanderbilt; the complaint was dismissed as to the latter.

Further facts appear in the opinion.

*Charles Jones*, for appellants. Defendants were not estopped by the judgment from showing the ownership of the " C. Vanderbilt " at the time the alleged cause of action arose. (*Miller* v. *White*, 50 N. Y., 137; *McMahon* v. *Macy*, 51 id., 155; *Hoffman* v. *Van Nostrand*, 45 Barb., 174.) This action, if maintainable at all, could be brought by a receiver of The New Jersey Steam Navigation Company. (*Osgood* v. *Laytin*, 5 Abb. [N. S.], 1.) Judgment could only be entered against the appellants for their *pro rata* share. (Story's Eq. Jur., § 1252; *Wood* v. *Drummond*, 3 Mason, 308.) It was essential to the maintenance of this action that plaintiff's title, or the capacity in which he made or claimed a right to sue, should be pleaded and proved. (*Rockwell* v. *Merwin*, 45 N. Y., 166.)

*William Allen Butler*, for respondent. The corporate existence of the New Jersey Steam Navigation Company continued until its charter expired February 28, 1869. (*N. Y. Marb'ld Iron Works* v. *Smith*, 4 Duer, 362–375; *Willets* v. *Waite*, 25 N. Y., 577–582; *Kincaid* v. *Dwinelle*, 59 id., 548.) The president and directors of said company in office January 1, 1864, continued in office until others should be elected in their place, and the fact that no others were elected does not affect the liability sought to be enforced in this action. (*People* v. *Runkle*, 9 Johns., 147; *Olcott* v. *Tioga R. R. Co.*, 27 N. Y., 546–557.) Upon the expiration of the company's charter its property became a trust fund in the hands of the directors and managers of the corporation for the payment of its debts. (Nixon's Digest [N. J.], 172, 173, §§ 29, 30; 1 R. S., 600, § 9; *Bartlett* v. *Drew*, 57 N. Y., 587.) Plaintiff's equitable lien on the property could not be defeated or impaired by any act of defendants, and was enforceable against the property

in the hands of any stockholder. *Tinkham* v. *Borst*, 31 Barb., 407; *Mann* v. *Pentz*, 3 N. Y., 415; *Bacon* v. *Robertson*, 18 How., 480; *Vole* v. *Green*, 15 Mass., 518; *Mumma* v. *The Potomac Co.*, 8 Pet., 281; *Curran* v. *State of Arkansas*, 15 How., 304; *Bartlett* v. *Drew*, 60 Barb., 648; S. C., 57 N. Y., 587.) As between plaintiff and the appellants the latter are estopped from denying the ownership of the "C. Vanderbilt" by The New Jersey Steam Navigation Company or the liability of said corporation for the cause of action in favor of plaintiff. (*Van Norman* v. *Phelps*, 9 Barb., 500; *Orcutt* v. *Orms*, 3 Paige, 459.) There was no defect of parties. (*Bartlett* v. *Drew*, 60 Barb., 648; 57 N. Y., 587.)

MILLER, J. The claim of the plaintiff in this action arises upon a judgment for damages resulting in consequence of a collision between the "C. Vanderbilt," one of the steamboats belonging to The New Jersey Steam Navigation Company, of which the defendants and others were directors and stockholders, and a vessel which had been insured by The Security Insurance Company, which the plaintiff represents. The collision occurred on the 14th day of July, 1864.

There was a sale, at public auction, of the "C. Vanderbilt" and four-fifths of the "Francis Skiddy," on the 15th day of February, 1864, under an arrangement that the defendant, Jacob H. Vanderbilt, should bid off the same for the defendants and such others of the stockholders of the company as should participate with them in the said arrangement; and that the defendants and such other participating stockholders should continue to be interested in proportion to their stock, and those who did not participate were to receive their proportionate share of the sum bid, to which they were respectively entitled. The price bid, $85,000, was not paid; and the vessel continued to run thereafter, the same as previously. The defendant, Drew, acted as president of the corporation, and the other defendants were trustees and stockholders; and in the month of March, 1865, the "Vanderbilt" was

sold, by an instrument executed by the president of the corporation claiming it to be the owner of the same. The foregoing facts, with others showing the ownership of the property in the corporation, are found by the court, with sufficient evidence to support the findings and the conclusion arrived at, that the sale was not a real one, and that the title and actual possession of said property was unchanged.

It necesarily follows, therefore, that the contention of the appellant's counsel, that the claim of The Security Insurance Company was not a legal and valid claim against The New Jersey Steam Navigation Company, and only a claim against individuals, who, on their own account, were running the "C. Vanderbilt" at the time of the collision, is without merit, and cannot be upheld.

It is insisted that the judgment recovered against the corporation is not evidence against the defendants. The action is in the nature of a creditor's bill to reach the property of the corporation, which is in the possession of the defendants, and liable for its debts. It being final and conclusive against the corporation, who appeared and defended, and now sought to be enforced against the corporate property, it follows that it is conclusive against the trustees and stockholders, provided they received and appropriated the property for their own use in accordance with the findings. The authorities cited by the defendant's counsel, in reference to this branch of the case, do not sustain the doctrine that the judgment was not evidence. (*Miller* v. *White*, 50 N. Y., 137; *McMahon* v. *Macy*, 51 id., 155.) In each of the cases cited, the action was brought to enforce a liability, under a statute highly penal in its character, and the rule in such cases has no application here. No reason exists why, in a case of this nature, where the action is brought to reach property of the corporation, which was subject to the lien of the judgment of the plaintiff, and to apply the same to its payment and satisfaction, the judgment should not at least be regarded as *prima facie* evidence. The suggestion made, that the rule stated would

allow a judgment for a fictitious claim, by collusion of the officers of the corporation, is answered by the simple remark, that there is no evidence of any such collusion, in the case at bar.

There is, we think, no ground for claiming that the plaintiff did not establish a liability to account for the money and property of The New Jersey Steam Navigation Company, which came into the possession of the defendants, as directors and stockholders of said company. The proposition is well settled, that the stock and property of every corporation is to be regarded as a trust fund for the payment of its debts; and its creditors have a lien upon it, and the right to priority of payment over any stockholder. It may be followed into the hands of its directors; and even when it has been divided among its stockholders before its debts are paid, a judgment-creditor may pursue it, after the return of an execution unsatisfied, and maintain an action in the nature of a creditor's bill against a stockholder, to reach whatever was so received by him. This was distinctly held in *Bartlett* v. *Drew* (57 N. Y., 587); and there is no such distinction between the case cited and the one at bar as to render the former inapplicable. The proof showed that the defendants had such property; and a liability to account for the same necessarily follows. The defendants had no right, we think, to take the steamboat for their own benefit, free from the liens of creditors; and the transfer of the property by the corporation, under the direction of the officers of the company, enured for the benefit of the stockholders and such persons as might have an interest in the property of the corporation.

It is further insisted, that under the laws of this State or the laws of New Jersey, the defendants could not be held liable for anything more than the property which came into their hands as directors of the company, after the plaintiff's claim accrued; and that there is no evidence that any property came into the possession of the defendants at the time The New Jersey Steam Navigation Company was dissolved.

The company was never formally dissolved, except by the limitation of its charter, under the act of incorporation by the Legislature of the State of New Jersey, which expired on the 29th day of February, 1869.

The answer of the defendant, in the original action brought by The Security Insurance Company against The New Jersey Steam Navigation Company, verified by the defendant Drew, admits that the defendant was the owner of the steamboat " C. Vanderbilt," at the time of the collision. The joint answer of the defendants, Drew and Englis, admits the incorporation and organization of The New Jersey Steam Navigation Company; its carrying on business; the commencement of an action by the plaintiff; the appearance of The New Jersey Steamboat Company therein; and the recovery of the judgment against it. There is a virtual indorsement of the answer in the original suit, which answer admitted the ownership of the " Vanderbilt." The effect of the several answers referred to is, that as between the plaintiff and the defendants, Drew and Englis, they are estopped from denying the ownership of the " C. Vanderbilt " by The New Jersey Steam Navigation Company, or its original liability to The Security Insurance Company.

The defendants being the owners of the " C. Vanderbilt," it must, I think, be assumed that the property in their possession, or the avails of the sale thereof in May, 1865, belonged to them, and that they had the benefit of the same, and were liable to account therefor, up to and since the expiration of the charter of the company. In the case at bar, the judgment was obtained, and the execution issued and returned unsatisfied in 1868, before the expiration of the charter. The liability of the defendants was fixed before the dissolution of the company. Thereupon the property and assets of the company was a trust fund in the hands of the managers of the company, for the payment of its debts, under the laws of New Jersey and of the State of New York. (Laws of N. J., Nixon's Dig., 172, 173, §§ 29, 30; 1 R. S., 600, § 9.)

As to the defendant Englis, it is urged that he owned only a small amount of stock ; and that by the judgment he is liable to repay the dividend of 1863 to satisfy a debt which was not in existence, but was afterwards incurred, while he should only be liable to pay his *pro rata* share upon said stock.   Although it is claimed that Englis was not a director of The New Jersey Steam Navigation Company, the judge found that he was such director on the 1st day of January, 1864; and that he and the other defendants continued to act as a board of directors, and no other persons were elected, after the last-named day, as directors and as president of the company.   There was, I think, sufficient evidence to support the finding ; and the proof shows that the defendant Englis was an active manager of the affairs, having taken the place of Mr. Vanderbilt in running the boats after the sale.   As one of the directors and managers he must have received, or, at least, was entitled to receive the income, if any there was, and the avails of the sale of the " C. Vanderbilt," when it was sold.   What amount that was does not distinctly appear, as the bill of sale does not state the consideration money paid on the sale.   With evidence that, upon the sale, the " C. Vanderbilt" and the four-fifths of the " Francis Skiddy " brought $85,000, the presumption is, in the absence of proof of the actual sum received, which the defendants had it in their power to furnish, that it was of some value, and probably sufficient to render the defendant Englis liable for his proportion of the plaintiff's demand.   As the sale took place after the defendant's liability had been incurred, the avails thereof were obviously to be appropriated to discharge the same.   The defendant, therefore, should be compelled to contribute, not only for the stock he originally owned, but for the 800 shares which he afterwards purchased of Jacob H. Vanderbilt.   It is to be presumed that he received in proportion to his entire interest ; and that would include all the stock which he owned.   Each of the stockholders was liable, in proportion to his several shares, for the debts

of the company ; and the fact that the liability accrued prior to the purchase of the stock by Englis did not relieve any of such stock from contributing to pay the debts of the company. It was liable to contribute, before the transfer ; and no assignment could discharge such liability. Upon principle, no reason exists why the stock transferred by Vanderbilt to Englis should not be liable, for its proportionate share, for all lawful demands against the company, prior to such transfer. The property then owned by the company, or in the hands of the defendants, was subject to the lien of plaintiff's claim, as well as all others, and that lien existed the same after the transfer of the stock to Englis as it did prior thereto, and the defendant purchased subject to such lien. He took it *cum onere*, and is in no position now to claim that he is exonerated, or that the claim of the plaintiff is against the former owner of the stock. If a party, thus accepting a transfer of stock, could claim that the property of the company existing at the time, the avails of which he had afterwards received from the company, was not subject to a lien for its debts and liabilities, it would lead to the most inextricable confusion. In case all the stockholders held stock by assignment, after the demand was incurred, they might appropriate the entire assets of the company for their own benefit, and thus prevent its application to the payment of debts, and leave the creditor to pursue an uncertain and doubtful remedy against former stockholders. If a portion thus held, the difficulty would be still greater in obtaining the proper relief. The distinct point considered was not raised upon the trial ; and hence, it is not necessary, perhaps, to pass expressly upon the same. Be that as it may, however, I cannot resist the conclusion that the stock, in whosoever hands it might be, was liable to contribute its proportionate share for all that was realized from property which was in existence at the time of the transfer to Englis. But even if it were otherwise, it appears from the testimony of Vanderbilt that when he sold to Englis he sold himself clear, and Englis took all the liabilities of the boats and all the receipts.

The intention of both parties undoubtedly was to transfer the stock, subject to all lawful claims against the company; and such being the case, no legal ground appears why Englis should not be held liable, to the extent of the entire interest, which he held as a stockholder.

No other question is raised that demands comment, which is not properly disposed of in the comprehensive opinion of the Special Term, as well as that of the General Term; and the judgment must be affirmed.

All concur, except RAPALLO and EARL, JJ., not voting.

Judgment affirmed.