VIRGINIA TIDE-WATER COAL CO. *v.* MERCANTILE TRUST CO. *et al.*

(*Supreme Court, General Term, First Department.* December 29, 1890.)

CORPORATIONS—BONDS—DISTRIBUTION AMONG STOCKHOLDERS.

> H., president of a corporation, most of the outstanding stock of which was owned by him and his wife, procured the passage of a resolution by the board of directors that one-half of certain bonds of the company, which it had been unable to dispose of, should be distributed among the stockholders *pro rata*. No meeting of stockholders was held to authorize or ratify such distribution, and several of them did not assent thereto. H. transferred the bonds allotted to the stock of himself and wife and such stock to D. for a sum far below their face value. D. claimed to have purchased them in good faith, but it appeared that he must have known in what manner H. obtained the bonds. Thereupon the trustee in a mortgage of the company's property to secure payment of the bonds advertised the property for sale under a power of sale in the mortgage for failure to pay interest on the bonds. *Held*, that an injunction against such sale should be continued pending an action in the name of the company against the trustee, H., and D. to restrain the sale. Distinguishing *Paulding* v. *Steel Co.*, 94 N. Y. 341.

Appeal from special term, New York county.

Action by Virginia Tide-Water Coal Company against the Mercantile Trust Company, Walter Hamilton and Ferral C. Dinniny, Jr. This action is brought to restrain the proposed sale by the Mercantile Trust Company, as alleged trustee for bondholders, of 809 acres of coal lands in the state of Virginia, the property of plaintiff. An order enjoining such sale *pendente lite* was made and continued herein, and the defendant Dinniny, an alleged holder of certain bonds, alone appeals from such order.

The plaintiff, about December 31, 1887, executed 500 interest-bearing coupon-bonds of the denomination of $1,000 each, and, to secure the same, executed on that date a mortgage or deed of trust to the said trust company. The execution of these bonds was duly authorized by resolution of the stockholders at a meeting called for that purpose, and at the same meeting the stockholders authorized, as part of the plan upon which said bonds were issued, the making of a contract for the disposal of said bonds by a syndicate. The time limited in said contract for the disposal of said bonds by the syndicate having expired, and the bonds being intact and unsold, said syndicate retired from the control of the plaintiff, and the contract under which the bonds had been made ceased and determined, and said trust company returned the bonds to the plaintiff by delivering them to Walter Hamilton, the president of the plaintiff, about August 20, 1888. The bonds remained in the hands of the company intact until about October 16, 1888, when the defendant Hamilton, president of plaintiff, procured the passage by the board of directors of plaintiff of a resolution to the effect that one-half of said bonds should be distrib-

uted *pro rata* among the stockholders. This resolution was passed by the vote of said Hamilton and his wife, who then held $330,000 worth of the $500,000 of the outstanding stock of the company. One-half of the stock of the company was at that time in the treasury of the company. Hamilton, under the alleged authority of such resolution, has taken and converted to his own use $165,000 worth of said bonds so allotted to the $330,000 worth of stock, and has attempted to transfer the whole thereof (stock and bonds) to the defendant Dinniny for $12,000. Dinniny has paid $7,000 and received the bonds, but, by reason of the refusal of the treasurer of the company to transfer the stock, he has not paid the remaining $5,000. Dinniny received said bonds in the month of January, 1890, and on January 15, 1890, the Mercantile Trust Company, under a power of sale in said mortgage, began to advertise the plaintiff's property for sale for alleged failure to pay interest on said bonds, and this action was brought to restrain such sale, and to declare said bonds and mortgage void. No stockholders' meeting was held to authorize the re-issue of said bonds, or to ratify the resolution for the distribution among stockholders. The plaintiff has not received any value for said bonds, and all the bonds, except those taken by Hamilton, are now in the possession of the plaintiff, and no stockholders other than said Hamilton make any claim thereto. The company never did any business or made any profits, and there are several stockholders not assenting to the resolution to distribute those bonds. The lands of the company were purchased from Hamilton and wife, who received the whole capital stock—$1,000,000—therefor. They subsequently, and before December 31, 1887, donated $500,000 of the stock to the plaintiff for working capital, and that stock has been ever since in the treasury of the company. At the time of making the first contract for the sale of the bonds the stockholders made Hamilton their trustee to transfer stock and receive a certain percentage of bonds for them. When this contract failed of its purpose the trust ceased. Nevertheless, 2,500 shares of stock so transferred by Mrs. Hamilton to Mr. Hamilton as trustee still stand in the name of such trustee, and such stock he has attempted to sell to Dinniny. Mrs. Hamilton died about March 1, 1889. The resolution of October 16, 1888, to reissue the bonds was the inception of a new attempt to sell these bonds through a new syndicate, and Hamilton was to be again trustee for the stockholders, but the action of Hamilton in taking $165,000 worth of the bonds and applying them to his own use has prevented that purpose.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Cornell, Secor & Page,* (*Horace Secor, Jr.,* of counsel,) for appellant. *George Bell,* for respondent.

BRADY, J. The facts and circumstances detailed show an attempt at mal-appropriation of the bonds by Hamilton, and he was properly arrested in the full accomplishment of his purpose. The stock and bond holders of a company may doubtless justly divide its property among each other if there be no creditors and no dissenters, but there must be a meeting for that purpose. Here it is expressly alleged, and substantially admitted, that there was no such meeting. Not only that, but that the resolution of the company thereto was procured by Hamilton, under the alleged authority of which he took, as allotted to the amount of stock held by himself and wife, $165,000 of the bonds, and attempted to sell them to the defendant Dinniny, who seems to have admitted that he had notice of the equities existing between the plaintiff company and Hamilton. If, however, it be not admitted by him, and his statement that he bought them in good faith is to be considered, it must be said as clearly established that he bought the bonds knowing that Hamilton was president of the company plaintiff, and one of its directors; and, further, that they were not sold to obtain a working capital, or to pay a debt, but as the private property of Hamilton. He also knew that the stock which he

bought stood in Hamilton's name as trustee, to which must be added that he bought the bonds for a sum far below their face value, giving only $12,000 for bonds to the amount of $150,000, in addition to 3,300 shares of stock. Directors of a company have no authority to vote interest-bearing bonds to themselves as a gratuity. The act is *ultra vires* and void. *Kelsey* v. *Sargent*, 40 Hun, 150; *McNaughton* v. *Osgood*, 41 Hun, 109. They are regarded as trustees, and restricted, as such, to acts consistent with and protective of their rights of bond and stock holders and creditors. Stockholders may doubtless hypothecate the property of the company to pay debts, or to raise money for corporate purposes, but that is all, unless, as suggested, there are no debts, and the company is in such condition financially that it may wind up its affairs and go out of existence, and provided the stockholders and bondholders are respectively allotted their full shares. *Bartlett* v. *Drew*, 57 N. Y. 587; *Hastings* v. *Drew*, 76 N. Y. 9. There is no element of neglect existent herein which may invoke the doctrine of acquiescence in the unlawful act complained of, proclaimed in *Kent* v. *Mining Co.*, 78 N. Y. 159, and other cases. There are no existent facts on which it could be predicated. Nor can the appellants derive any benefit from the fact that the board of directors owned five-sixths of the stock, and their consent was binding upon them as stockholders, as suggested in *Paulding* v. *Steel Co.*, 94 N. Y. 341. That case related, however, to a mortgage given by the company, which was assailed as fraudulent, but which was held to have been lawfully executed. It is wholly unlike the case in hand, in which the defendants seek to uphold a division of the bonds of the company made gratuitously and without consideration. It thus sufficiently appears that the injunction was provident, and should be sustained. Order affirmed, with $10 costs and disbursements.

DANIELS, J. The affidavits establish the fact that the bonds were obtained and issued without authority. And while the defendant F. C. Dinniny, Jr., swears to their purchase in good faith, he does not specifically deny notice or information of the manner in which Hamilton obtained them. Such a denial was essential to the support of his title. Its absence, added to his intimacy with Hamilton, and the removal of the company's books to his office, afforded sufficient support to the injunction to require its continuance. The injunction issued out of the court of chancery in New Jersey did not prevent the prosecution of this action in this state. The remedy, if even that will be sustained, will be by further proceedings in that court. The order should be affirmed.

VAN BRUNT, P. J., concurs.