OPINION OF THE COURT
C. Stephen Hackeling, J.
*634 The plaintiff Christine Parent has moved this court seeking to amend her judgment obtained against Amity Autoworld, Ltd. to substitute its alleged successor business J S Autoworld, Ltd. The court scheduled a fact-finding hearing pursuant to UDCA 1813 and 1814 and the substantive law of New York via order dated September 9, 2006. The respondents and plaintiff both presented witness testimony and documentary evidence at a hearing held November 27, 2006. The court also considered the respondents’ affirmation in opposition dated July 14, 2006, and the respondents’ memorandum of law and fact dated January 24, 2007.
Undisputed Facts
1. The plaintiff leased an automobile from Amity Autoworld, Ltd. in January 2002.
2. Amity sold all its Toyota automobile franchise assets and corporate opportunity to respondent J S Autoworld, Ltd. (hereafter Atlantic) pursuant to agreement in May 2002. (Exhibit B.) For some inexplicable reason the alleged payments for the Amity dealership were made on February 27, 2002 and March 15, 2002 directly to John Staluppi, Jr. (Exhibits F, G of respondent’s mem of law.) The bill of sale reflects a January 16, 2003 sale date. (Exhibit E.)
3. The plaintiff made a written claim for money damages to Amity on June 11, 2002. (Exhibit 5.)
4. The plaintiff commenced a small claims action against Amity via complaint dated March 9, 2005 and obtained a $2,643 arbitrator’s award. The successor business entity, Atlantic, appeared via counsel at the arbitration hearing (although not a party) and successfully argued that no judgment should be awarded against the codefendant salesman, Anthony Pizutto, individually. The arbitrator awarded a default judgment against Amity only without apparent opposition by the respondent Atlantic.
5. The Suffolk County Sheriff returned the plaintiffs execution against Amity as unsatisfied on July 12, 2006, advising that the Toyota dealership is now owned by Atlantic.
6. Atlantic Toyota employs the same comptroller as Amity after the sale, as well as several other employees including the Amity salesperson, Anthony Pizutto. (Exhibit 6.)
7. Atlantic defends four to five legal action claims made annually against Amity, including another independent arbitration action maintained on the date of this hearing, in this court.
*635 8. Amity’s principal stockholder is John Staluppi, Jr., who is the son of Atlantic’s principal stockholder John Staluppi, Sr. John Staluppi, Jr. is listed with the New York State Division of Corporations database as the “chairman, chief executive officer, executive officer and agent for process of Amity Autoworld, Ltd.” As of June 29, 2006, the business office address given by John Staluppi, Jr. to New York State for the service of process by the Secretary of State is 200 Sunrise Highway, Amityville, New York, 11701. (Exhibit 1.)
Issues Presented
Can a small claims judgment creditor extend liability under the judgment to either the directors of a defunct judgment debtor corporation or the transferee of all the defunct judgment debtor corporation’s assets pursuant to the provisions of UDCA 1813 and 1814?
Discussion
This is a small claims proceeding being prosecuted by a pro se plaintiff. The Uniform District Court Act has anticipated the fact that laymen often do not know the formal corporate name of commercial businesses who sell to consumers under assumed doing business as names. In an effort to not frustrate the purpose and function of the small claims court, the State Legislature enacted several statutes which allow plaintiffs to commence actions via complaint against the trade name of commercial entities and to thereafter enter judgment as against such other entities as the court determines is actually doing business. The statutes are section 1813 (a) and section 1814 (a) which provide as follows:
“§ 1813 Duty to pay judgments “(a) Any person, partnership, firm or corporation which is sued in a small claims court for any cause of action arising out of its business activities, shall pay any judgment rendered against it in its true name or in any name in which it conducts business. ‘True name’ includes the legal name of a natural person and the name under which a partnership, firm or corporation is licensed, registered, incorporated or otherwise authorized to do business. ‘Conducting business’ as used in this section shall include, but not be limited to, maintaining signs at business premises or on business vehicles; advertising; entering into contracts; and printing or using sales slips, checks, invoices or receipts. Whenever a *636 judgment had been rendered against a person, partnership, firm or corporation in other than its true name and the judgment has remained unpaid for thirty-five days after receipt by the judgment debtor of notice of its entry, the aggrieved judgment creditor shall be entitled to commence an action in the small claims court against such judgment debtor, notwithstanding the jurisdictional limit of the court, for the sum of the original judgment, costs, reasonable attorney’s fees, and one hundred dollars.”
“§ 1814 Designation of defendant; amendment procedure
“(a) A party who is ignorant, in whole or in part, of the true name of a person, partnership, firm or corporation which may properly be made a party defendant, may proceed against such defendant in any name used by the person, partnership, firm or corporation in conducting business, as defined in subdivision (a) of section eighteen hundred thirteen of this article.
“(b) If the true name of the defendant becomes known at any time prior to the hearing on the merits, such information shall be brought to the attention of the clerk, who shall immediately amend all prior proceedings and papers. The clerk shall send an amended notice to the defendant, without payment of additional fees by the plaintiff, and all subsequent proceedings and papers shall be amended accordingly.
“(c) In every action in the small claims part, at the hearing on the merits, the judge or arbitrator shall determine the defendant’s true name. The clerk shall amend all prior proceedings and papers to conform to such determination, and all subsequent proceedings and papers shall be amended accordingly.
“(d) A party against whom a judgment has been entered pursuant to this article, in any proceeding under section five thousand fifteen of the civil practice law and rules for relief from such judgment, shall[ ] disclose its true name; any and all names in which it is conducting business; and any and all names in which it was conducting business at the time of the transaction or occurrence on which such judgment is based. All subsequent proceedings and *637 papers shall be amended to conform to such disclosure.”
Bulk Sale/Fraudulent Conveyance
Atlantic’s able counsel advances two arguments in opposition to the plaintiffs application to spread the liability arising under her judgment to other related parties. First, he correctly notes that his client, a transferee of the Amity assets, did not violate article 6 of the bulk transfer section of the Uniform Commercial Code, as it was repealed by the Legislature effective July 1, 2001. Secondly, it is asserted that no violation of the Debtor and Creditor Law fraudulent conveyance statutes occurred as the conveyance was made for fair consideration.
The court will summarily dispose of the fraudulent conveyance issues by finding that the imposition of liability under sections 270 to 281 of the Debtor and Creditor Law involves independent statutory causes of action which can be maintained only against asset transferees under the auspices of an independent summons and complaint. Sections 1813 and 1814 of the Uniform District Court Act are statutory vehicles to allow an unsophisticated layman plaintiff to enter judgment against the actual existing entity he did business with. The fraudulent conveyance statutes cannot serve as the basis to spread liability to a successor transferee entity as they involve issues of fair consideration and insolvency which are independent of the underlying small claims cause of action. The court notes, in the nature of dicta, that the respondent appears to have paid in excess of $4,000,000 to acquire the Toyota dealership, although the consideration was paid directly to his son and not to the corporate Amity entity. (See exhibit G of Amity mem of law.) Such a transfer circumvents formal corporate liquidation procedures and may possibly constitute a fraudulent conveyance, as defined in Debtor and Creditor Law §§ 274 and 276. This decision is without prejudice to the plaintiffs instituting an independent fraudulent conveyance action, which in certain circumstances allows for the recovery of attorney’s fees.
What’s Left after Article 6 Repeal
The issue of the repeal of article 6 (Bulk Sales Law) of the Uniform Commercial Code is more problematic. Uniform Commercial Code commentators have opined that
“[b]ulk sale legislation originally was enacted in response to a fraud perceived to be common around the turn of the century: a merchant would acquire his stock in trade on credit, then sell his entire *638 inventory (‘in bulk’) and abscond with the proceeds, leaving creditors unpaid. The creditors had a right to sue the merchant on the unpaid debts, but that right often was of little practical value. Even if the merchant-debtor was found, in personam jurisdiction over him might not have been readily available. Those creditors who succeeded in obtaining a judgment often were unable to satisfy it because the defrauding seller had spent or hidden the sale proceeds. Nor did the creditors ordinarily have recourse to the merchandise sold. The transfer of the inventory to an innocent buyer effectively immunized the goods from the reach of the seller’s creditors. The creditors of a bulk seller thus might be left without a means to satisfy their claims.” (See ULA, UCC Free. § 1, Refs & Annos [2005] [Prefatory Note to rev UCC art 6, 2C ULA 6].)
For a reason not stated in the statute’s annotations, the Legislature followed the recommendation of the National Conference on Uniform State Laws and the American Law Institute and repealed its Bulk Sales Law. Absent enactment of a replacement statute, or at least a declaration of the Legislature’s policy reasons in the repeal statute’s legislative history, the court is constrained to find that the purpose of the repeal was to revert back to the law that existed prior to article 6’s enactment. (See McKinney’s Cons Laws of NY, Book 1, Statutes § 411 [“Effect of Repeals”].)
The state of the law prior to enactment of the bulk sales article 6 statute was well settled. Even in the absence of fraud, it was a violation of a duty on the part of the directors of a corporation to divest itself of all its property without affording a reasonable opportunity to its creditors to present and enforce their claims before the transfer becomes effective. (Darcy v Brooklyn & N.Y. Ferry Co., 196 NY 99 [1909].) The assets of a corporation constitute a trust fund for the payment of its debts. (Bartlett v Drew, 57 NY 587 [1874].) After the return of an unsatisfied execution against the defunct corporation, a creditor may maintain an action against a shareholder to reach assets received by him. (Hastings v Drew, 76 NY 9 [1879].) Directors incur derivative personal liability when they undertake to divest a corporation of all its property and in reality dissolve it without undertaking the “proceedings for voluntary dissolution.” (See Darcy v Brooklyn & N.Y. Ferry Co. at 103, quoting Hurd v New York & Commercial Steam Laundry Co., 167 NY 89, 95 [1901].) *639 These Court of Appeals cases extended liability to corporate directors, not as an incident of fraud, but because they failed to undertake their duty to give creditors notice of transfer as provided in section 1781 (2) of the then existing Code of Civil Procedure. This holding was reaffirmed by the Appellate Division, Second Department, in 1940, construing the then General Corporation Law to require notice of bulk asset transfer to creditors as a precursor to corporate dissolution, as well as in dicta by the Court of Appeals in 1960 construing the successor statute, section 29 of the General Corporation Law. (See Home Indem. Co. v Filyork Holding Corp., 258 App Div 962 [2d Dept 1940]; Matter of Baldwin Trading Corp., 8 NY2d 144 [I960].)
It appears that shortly after the Baldwin Trading Corp. decision the Legislature enacted article 6 of the UCC (Bulk Sales Law), repealed the General Corporation Law and enacted sections 1006 and 1007 of the Business Corporation Law which provide:
“§ 1006. Corporate action and survival of remedies after dissolution
“(a) A dissolved corporation, its directors, officers and shareholders may continue to function for the purpose of winding up the affairs of the corporation in the same manner as if the dissolution had not taken place, except as otherwise provided in this chapter or by court order. In particular, and without limiting the generality of the foregoing:
“(1) The directors of a dissolved corporation shall not be deemed to be trustees of its assets; title to such assets shall not vest in them, but shall remain in the corporation until transferred by it in its corporate name.”
“§ 1007. Notice to creditors; filing or barring claims “(a) At any time after dissolution, the corporation may give a notice requiring all creditors and claimants, including any with unliquidated or contingent claims and any with whom the corporation has unfulfilled contracts, to present their claims in writing and in detail at a specified place and by a specified day, which shall not be less than six months after the first publication of such notice. Such notice shall be published at least once a week for two successive weeks in a newspaper of general circulation in the county in which the office of the corporation was located. . . .
*640 “(b) Any claims which shall have been filed as provided in such notice and which shall be disputed by the corporation may be submitted for determination to the supreme court under section 1008.”
The court notes that the use of the language “may give notice” to creditors in section 1007 is permissive in nature. As such, it appears that New York law allows for corporations to informally dissolve by transferring all their assets without giving notice to creditors. However, in the absence of an alternative provision like the Bulk Sales Law, the cost of an informal dissolution is that directors cannot shield themselves against corporate creditor liability. Directors who undertake to divest a corporation of all its property without taking the proceedings for a voluntary dissolution do so at their peril. The Darcy court (at 103) was unequivocal in its determination that it is “the neglect to afford [creditors an] opportunity [for court review of their claims that] constitute^] a violation of the directors’ duties, and it matters not that they may have supposed they were not required to do any more than they did for the protection of creditors.”
In the matter presented, it is undisputed that Amity was informally liquidated and dissolved without notice to creditors and that its sole shareholder John Staluppi, Jr. received in excess of $4,000,000 personally. This court is mindful that its immediate appellate tribunal recognizes the right of small claims plaintiffs to utilize sections 1813 and 1814 of the UDCA to enter judgment against a corporation and its principal individually under a “substantial justice” theory conditioned upon a suit being brought against both entities. (Katz v Rodolfo Valentin Salon, Spa & Hairpieces, 3 Misc 3d 126[A], 2004 NY Slip Op 50312[U] [App Term, 9th & 10th Jud Dists 2004].) Accordingly, the court authorizes the amendment of the plaintiffs complaint to include John Staluppi, Jr. as a secondary defendant and directs the clerk of the court to serve, pursuant to UDCA 1803, a copy of the amended summons and this decision upon John Staluppi, Jr. in care of Amity Autoworld, Ltd., at the business address presently indicated for him by the Secretary of State. Absent a formal corporate dissolution, the State of New York presently recognizes John Staluppi, Jr.’s office or place of regular employment to be 200 Sunrise Highway, Amityville, New York, 11701. The clerk shall also schedule a trial of the matter.