APPEALS OF O. B. BARKER, RICHARD A. NOELL, J. T. JENNINGS, W. L. EVANS, AND EDWARD E. YODER.

Docket Nos. 3583, 3223, 3222, 3221, 3220. Submitted October 21, 1925. Decided April 8, 1926.

1. March 1, 1913, value of capital stock determined.

2. In determining profit or loss arising from the declaration and payment of liquidating dividends, a stockholder is entitled to set off, against the amount received in liquidation of a corporation, the portion thereof which he has subsequently been required to refund by way of payment of taxes of the corporation.

*H. H. Shelton, Esq.*, and *O. H. Tufts, C. P. A.*, for the taxpayers.
*A. H. Murray, Esq.*, for the Commissioner.

Before GRAUPNER and PHILLIPS.

Taxpayers appeal from the determination of deficiencies for the calendar years 1918, 1919, 1920, and 1921, as follows:

| Taxpayer. | 1918 | 1919 | 1920 | 1921 |
|---|---|---|---|---|
| O. B. Barker | $24,300.78 | $321.22 | $154.25 | $194.25 |
| Richard A. Noell | 675.08 | 8.95 | 14.00 | 4.80 |
| J. T. Jennings | 3,766.37 | 14.28 | 25.55 | |
| W. L. Evans | 303.01 | | 16.22 | 1.80 |
| Edward E. Yoder | 721.09 | 10.00 | 12.00 | 4.80 |

In each of these cases the greater portion of the deficiency arises by reason of the liquidation of the Barker-Jennings Hardware Co., and the principal question involved is the March 1, 1913, value of the three classes of stock of that corporation.

### FINDINGS OF FACT.

During the years 1918, 1919, 1920, and 1921 the taxpayers owned stock of the Barker-Jennings Hardware Co., as follows:

| Taxpayer. | First preferred stock. | Second preferred stock. | Common stock. |
|---|---|---|---|
| O. B. Barker | 260 | 340 | 380 |
| Richard A. Noell | | | 40 |
| J. T. Jennings | | | 120 |
| W. L. Evans | | | 30 |
| Edward E. Yoder | | | 40 |

During the years in question the affairs of the corporation were liquidated and liquidating dividends were paid as follows: $100 per share on the first preferred stock in 1918, $100 per share on the second preferred stock in 1918, $555 per share on the common stock in 1918, $5 per share on the common stock in 1919, $5 per share on the common stock in 1920, and $6 per share on the common stock in 1921. All of such stock was owned by the respective taxpayers prior to March 1, 1913. The Commissioner determined the March 1, 1913, value of the two classes of preferred stock to be $100 per share and the March 1, 1913, value of the common stock to be $400 per share, and computed the gain from the liquidation on that basis. The taxpayers claim the March 1, 1913, value of the common stock to be $666.66 per share, of the first preferred stock to be $100 per share, and of the second preferred stock to be $122.66 per share.

The Barker-Jennings Hardware Co. was incorporated in 1894 and took over and operated a wholesale hardware business which had been in continuous operation in Lynchburg, Va., since prior to the Civil War. Upon organization the corporation issued $75,000 par value of its common stock. In 1905 it issued 5 per cent preferred stock which it sold at par and which was retired at par in 1909. In 1912 it issued $75,000 par value of its first preferred 6 per cent nonvoting capital stock and $75,000 par value of its second preferred nonvoting stock. The second preferred stock was to receive dividends at the rate of 6 per cent per annum and an additional 2 per cent per annum whenever dividends of 10 per cent per annum or more were declared and paid on the common stock. The second preferred stock paid dividends at the rate of 8 per cent per annum from the date of its issue.

From its organization the business of the corporation was successful. For six years prior to March 1, 1913, the dividends upon the common stock averaged 40 per cent per annum. Shortly after 1913 the dividends were increased to 46 per cent and later to 48 per cent per annum. Both before and after March 1, 1913, the corporation, in addition to paying such dividends, increased its surplus account. On March 1, 1913, the earned surplus of the corporation as shown by its books was $145,483.22.

On December 2, 1917, the place of business of the taxpayer was destroyed by fire. The principal stockholders of the taxpayer were well along in years and not in good health, and they determined to liquidate the affairs of the corporation rather than to continue the business.

On March 1, 1913, the fair market value of the first preferred stock was $100, of the second preferred stock $120, and of the common stock $500 per share.

In 1923, after the liquidation of the corporation had been completed, additional income and profits tax for 1917 was assessed against the corporation by the Commissioner. This tax was compromised by the payment of $2,000 on May 31, 1923. Of this amount, $1,520 was paid by O. B. Barker and the balance by others whose common stockholdings in the corporation had been liquidated.

In 1912 the husband of the sister of the taxpayer Richard A. Noell died. The widow was without funds, and during the years in question the widow and her three children were supported by the taxpayer Richard A. Noell. All of the children were under 18 years of age and the services of the mother were devoted to the maintenance and care of a home for the children.

## OPINION.

PHILLIPS: The principal issue involved is the March 1, 1913, value of the various classes of stock of the Barker-Jennings Hardware Co. The stock was closely held by the persons actively engaged in the business, and, except for the sale of a few shares of second preferred stock, there appear to have been no dealings. The parties agree upon $100 as the March 1, 1913, value of the first preferred stock. The evidence shows sales of the second preferred stock within six months of March 1, 1913, at from $120 to $135 per share. This stock was, in effect, an 8 per cent stock in an established corporation, the annual earnings of which were more than five times the amount necessary to pay the dividend. The testimony of prominent bankers and brokers of Lynchburg, where the corporation operated, and which would be the natural market for such stock, was that such stock would sell on a 6 per cent basis in March, 1913. In view of this testimony and the testimony concerning the few actual sales which took place, we believe that a value of $120 on March 1, 1913, is proper.

The testimony of these same bankers and brokers as to the fair market value of the common stock on March 1, 1913, varied from $450 to $700 per share. The corporation had back of it a long and successful career. It was paying dividends of 40 per cent, and had been paying such dividends for many years, and at the same time had built up a surplus. In 1905 it had floated preferred stock at 5 per cent and in 1912 at 6 per cent. Considering the record of the company, its earnings, its dividends, and the testimony of persons familiar with market conditions for local stocks in Lynchburg in 1913, we believe that the fair market value on March 1, 1913, as nearly as that value can be determined at the present time, was $500.

The petitions of the taxpayers allege that such taxpayers owned both first and second preferred stocks. These allegations of the petitions are denied and there is no proof of the ownership of any such stock, except in the case of O. B. Barker. The ownership of the common stock is conceded in the deficiency letters. For these reasons the findings set out the holdings of these taxpayers of common stock, but no findings are made as to the ownership of any preferred stock, except that owned by Barker.

It appears that in 1923, after the liquidation of the corporation, Barker was required to pay out $1,520 on account of a compromise of additional income and profits taxes for 1917 assessed against the corporation. In some respects this situation resembles that presented in the *Appeal of Clarence Le Bus*, 1 B. T. A. 733. In that appeal,

however, it appeared that the amount retained by the trustees in liquidation was sufficient to meet all of the obligations of the corporation, and the only question involved was whether the liquidating dividends were to be accounted for in the year in which received by the stockholder or in the year in which the affairs of the corporation were finally wound up by final payment of its liabilities. Here the situation is different, for the stockholders were paid in liquidation sums in excess of their equity in the corporation, and Barker was required to make repayment.

There can be no question that it was the duty of the corporation to pay all taxes lawfully imposed upon it. Taxes can be imposed retroactively and the duty of payment can not be escaped by dissolution. *Brushaber* v. *Union Pacific R. R. Co.*, 240 U. S. 1; 36 Sup. Ct. 236; 3 Am. Fed. Tax Rep. 2926; *United States* v. *General Inspection & Loading Co.*, 192 Fed. 223; 1 Am. Fed. Tax Rep. 182; *United States* v. *Boss & Peake Automobile Co.*, 285 Fed. 410; 2 Am. Fed. Tax Rep. 1796; affd. 290 Fed. 167; 2 Am. Fed. Tax Rep. 1973; *Brady* v. *Anderson*, 153 C. C. A. 463; 240 Fed. 665; 1 Am. Fed. Tax Rep. 778; certiorari denied, 244 U. S. 654; 37 Sup. Ct. 652. By reason of the receipt of liquidating dividends, in excess of their equity in the corporation, the stockholders became liable to repay so much thereof as was necessary to pay taxes and debts of the corporation.

In *Sawyer* v. *Hoag*, 17 Wall. 610, the court said:

Though it be a doctrine of modern date, we think it now well established that the capital stock of a corporation * * * is a trust fund for the benefit of the general creditors of the corporation.

In *Wood* v. *Dummer*, 30 Fed. Cases, 435, Case No. 17,944, where assets of a bank had been distributed to the stockholders in excess of their equity therein and the action was by creditors against the stockholders, Justice Story said:

The doctrine of following trust funds into the hands of any persons, who are not innocent purchasers, or do not otherwise possess superior equities, has long been established. * * *

The capital stock is a trust fund for creditors, and the stockholders, upon the division, take it subject to all equities attached to it. They are, to all intents and purposes, privies to the trust, and receive it *cum onere.*

The stockholders were held to be liable to the creditors to the extent of the amount distributed to them.

In *Updike* v. *United States*, 8 Fed. (2d) 913, in an action by the United States to recover taxes of a dissolved corporation from stockholders who had received liquidating dividends, the United States Circuit Court of Appeals for the Eighth Circuit held the stock-

holders liable to contribute pro rata for such tax to the extent of the amounts distributed to them, and in the course of its opinion says:

Its property then [upon dissolution] becomes a trust fund for the benefit of creditors and those sustaining a like position under the law; and, if that property has been distributed to stockholders, it remains impressed with the same trust.

The trust fund doctrine comes into effect with reference to distributions upon dissolution only when creditors or third parties are affected, *United States* v. *Boss & Peake Automobile Co., supra;* and then only to the extent to which the stockholder has received distributions in excess of his equity in the corporation's assets.

In 7 R. C. L. 199, the rule, amply supported by citations, is stated as follows:

The capital of a corporation is its own property, which it may use and dispose of, if not prohibited by its charter, the same as a natural person. It is not held in trust for creditors, except in the sense that there can be no distribution of it among stockholders without provision being first made for the payment of corporate debts, and that, as in the case of a natural person, any disposition of it in fraud of creditors is void. * * * The stockholders are conclusively charged with notice of the trust character which attaches to the capital stock; as to it they cannot occupy the status of innocent purchasers, and when they have in their hands any of this trust fund they hold it *cum onere*, subject to all equities which attach to it.

In 14 Corpus Juris, 970, it is stated as follows:

If the officers or stockholders of a corporation divide its capital or property among the stockholders leaving any debts unpaid, the stockholders are liable for the debts out of the funds or property so received, up to the value of the proceeds of the property each has received or so much thereof as is necessary to satisfy the claims of creditors.

In *Curran* v. *Arkansas*, 15 How. 304, the court said:

The plaintiff is a creditor of an insolvent banking corporation. The assets of such a corporation are a fund for the payment of its debts. If they are held by the corporation itself, and so invested as to be subject to legal process, they may be levied on by such process. If they have been distributed among stockholders, or gone into the hands of others than *bona fide* creditors or purchasers, leaving debts of the corporation unpaid, such holders take the property charged with the trust in favor of creditors, which a court of equity will enforce, and compel the application of the property to the satisfaction of their debts.

The court cites, with approval, 2 Story's Eq. Jur., sec. 1252, as follows:

If the capital stock should be divided, leaving any debts unpaid, every stockholder, receiving his share of the capital stock, would, in equity, be held liable pro rata to contribute to the discharge of such debts out of the fund in his own hands.

To the same effect, see *Mumma* v. *Potomac Co.*, 8 Pet. 281, and *Hastings* v. *Drew*, 76 N. Y. 9. These and many others are to the effect that the liability of the stockholder arises from the receipt by him of corporate funds subject to a trust to pay the corporate debts, and that the nature of the action is to set aside the delivery of the assets and recover either such assets or their value.

The payment made by Barker in 1923 on account of the corporate taxes was not an obligation incurred or a loss sustained by him in 1923, but was a repayment by him of corporate assets paid to him to which he had no equitable title. It was in the nature of a repayment of money received under a mistake of fact upon which a trust had been impressed and, to the extent to which the amount received was subject to the trust, was not income. *Appeal of Carey Van Fleet*, 2 B. T. A. 825. The amounts received by him in liquidation of the corporation should be reduced by the amount returned in payment of taxes of the corporation, the amount so returned being set off against the latest distributions received by the taxpayer.

In the case of the taxpayer Richard A. Noell, it appears that he was the sole support of the three children of his widowed sister. He maintained a home for them in charge of his sister. It is not necessary, in order to obtain the exemption for dependents, that such dependents be supported in the home of the taxpayer. During the years in question taxpayer should be allowed the credit provided by law for the support of three persons under the age of 18 years dependent upon him for their support.

The answers filed by the Commissioner in the appeal of each taxpayer other than O. B. Barker question the jurisdiction of the Board. Without reciting the facts in detail, it is sufficient to say that these appeals come squarely within the decisions of this Board in the *Appeals of Ormsby McKnight Mitchel*, 1 B. T. A. 143, and *Buffalo Slag Co.*, 1 B. T. A. 749, and the jurisdiction conferred by section 283 (f) of the Revenue Act of 1926. The plea of the Commissioner to the jurisdiction of the Board is overruled.

*Orders denying the motions of the Commissioner to dismiss and redetermining the deficiencies will be entered on 15 days' notice, under Rule 50.*