EDWARD S. HARKNESS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.
MARY S. HARKNESS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 65169, 71310, 71311.   Promulgated January 22, 1935.

*William E. Sims, Esq.*, for the petitioners.
*Mason B. Leming, Esq.*, for the respondent.

OPINION.

SMITH: These proceedings, which were consolidated for hearing, are for the redetermination of deficiencies in petitioners' income taxes for 1929 and 1930 in amounts as follows:

| Petitioner | Docket No. | Year | Deficiency |
|---|---|---|---|
| Edward S. Harkness | 65169 | 1929 | $235, 344. 84 |
| Do | 71310 | 1930 | 224, 141. 59 |
| Mary S. Harkness | 71311 | 1930 | 36, 558. 97 |

The issues involved in the several proceedings are as follows:

(1) Whether in computing the deduction for charitable contributions capital net gains are to be included in the net income upon which the statutory 15 percent limitation is based. (This issue is common to all three proceedings and is the only issue in Docket No. 71311.)

(2) Whether dividends declared and payable in 1929, but not received by the petitioner Edward S. Harkness who made his returns on the cash basis, until 1930, are taxable to him in 1929 or 1930. (This issue is common to Docket Nos. 65169 and 71310.)

(3) Whether the petitioner Edward S. Harkness is taxable upon the receipt of rights to subscribe to convertible debenture bonds of the American Telephone & Telegraph Co. and the Atchison, Topeka & Santa Fe Railway Co., which rights were received and exercised by him in 1929, and, if so, the value of such rights.

(4) Whether the capital net gain of the petitioner Edward S. Harkness for 1929 was erroneously increased by the respondent by the amount of $90,000. (Issues (3) and (4) are involved in Docket No. 65169 only.)

(5) Whether the profit derived by the petitioner Edward S. Harkness upon the liquidation of the Atheneum Co., was taxable to him in 1930, and, if so, whether the petitioner is entitled to be taxed upon such income at the capital net gain rate.

(6) Whether the petitioner Edward S. Harkness is taxable upon the amount of $190,948.24 received by him in 1930 as executor and residuary legatee under the will of his mother Anna M. Harkness which amount represented a refund of a portion of the estate tax and interest thereon paid by the estate. (Issues (5) and (6) are involved in Docket No. 71310 only.)

The petitioners are husband and wife. They filed separate income tax returns for each of the years involved and their returns were made on the cash receipts and disbursements basis and for a calendar

year. The several issues will be discussed in the order stated above. The essential facts pertaining to each issue have been stipulated.

Issue (1). During each of the years 1929 and 1930 the petitioner Edward S. Harkness made charitable contributions of not less than $5,000,000 and during 1929 the petitioner Mary S. Harkness made such contributions in an amount of not less than $250,000. In each of the years mentioned the respondent, in determining the amounts deductible by the petitioners on account of charitable contributions under section 23 (n) of the Revenue Act of 1928, excluded capital net gains from the income upon which the statutory 15 percent limitation was applied. The petitioners' contention that the amounts deductible on account of charitable contributions should be computed without excluding from income the capital net gains is sustained upon authority of *Helvering* v. *Bliss*, 293 U. S. 144.

It is stipulated that the petitioner Mary S. Harkness had a capital net gain of $879,245.76 in 1930. The amount of the capital net gain of the petitioner Edward S. Harkness is in dispute for both the years 1929 and 1930 and is the subject of issues hereinafter discussed.

Issue (2). In his income tax return for 1930 the petitioner Edward S. Harkness reported the receipt of dividends from the Prairie Pipe Line Co. in the amount of $243,987.50 and from the Standard Oil Co. of Kentucky in the amount of $114,224.80. The dividend of the Prairie Pipe Line Co. was declared on November 5, 1929, was payable to the stockholders of record on November 30, 1929, and the secretary of the company was directed to make the distribution on or before December 31, 1929. The Standard Oil Co. of Kentucky dividend was declared on November 22, 1929, was payable to the stockholders of record as of December 15, 1929, and was distributable on December 31, 1929. Checks for the amounts of both the dividends were mailed to the petitioner on December 31, 1929, but were not received by him until on or after January 2, 1930. In computing the petitioner's tax liability for 1929 the respondent included both dividends in his income for that year. The petitioner contends that the dividends in question are taxable to him in 1930, the year of their receipt.

A case on all fours with the present one was before the Supreme Court in *Avery* v. *Commissioner*, 292 U.S. 210. Those facts are stated by the Supreme Court as follows:

The petitioner was a large stockholder and president of the United States Gypsum Company. In November, 1924, the company declared a dividend payable on or before the 31st day of December following. Its check, dated December 31st for the amount attributable to his stock, payable to him, was received by petitioner, January 2, 1925. In November, 1929, another dividend was declared payable on or before the following December 31st, and the company's check for petitioner's portion was received by him January 2, 1930.

There, as here, the taxpayer kept his accounts and made his tax returns on the cash receipts and disbursements basis and for the calendar year. One of the questions before the Court was whether the dividend payable on or before December 31, 1929, but actually received by the petitioner on January 2, 1930, was taxable income of the year 1929, or of 1930. The Court, after referring to the various provisions of the taxing statutes, and especially to sections 41, 42, and 43 of the Revenue Act of 1928, which require in part that net income shall be computed upon the basis of the taxpayer's annual accounting period in accordance with the method of accounting regularly employed in keeping the books of the taxpayer, observed:

If we give the words of the statutes their ordinary meaning, clearly the dividends under consideration were not actually received by the taxpayer during 1924 and 1929. Certainly they were not received when declared. They did not come into the taxpayer's hands on December 31st simply because payable on that day. And, unless Congress has definitely indicated an intention that the words should be construed otherwise, we must apply them according to their usual acceptation.

\*      \*      \*      \*      \*      \*      \*

* * * The facts here disclose a situation substantially like that in *Adams* Case [*Commissioner* v. *Adams* (C. C. A. 1931), 54 Fed. (2d) 228, 230]; and we agree with the conclusion of the court therein, stated as follows: " We are also of the opinion that, on the facts found, the dividends were not ' unqualifiedly made subject to the demand of the stockholder ', in the year 1924, if article 52 of the Departmental Regulations can be said to be valid and not in conflict with the express language of section 213 (a)."

The respondent's construction of the decision of the Supreme Court in *Avery* v. *Commissioner*, *supra*, is disclosed in I. T. 2833, published in Internal Revenue Bulletin, December 3, 1934, headed " Effect of the decision of the Supreme Court of the United States in *Avery* v. *Commissioner*." In this I. T. it is stated in part:

The above-mentioned decision considered the application of the rule contained in the various regulations to the effect that a dividend is subject to income tax when unqualifiedly made subject to the demand of the shareholder, as set forth in articles 333 and 621 of Regulations 77 and the corresponding provisions of the regulations covering prior years. Application of such rule is found in the decision rendered by the United States Board of Tax Appeals in *Frederick S. Peck* v. *Commissioner* (29 B. T. A. 872), which involved dividends payable on December 31, 1929, where the checks in payment thereof were not received until January 1930. It was held that the payment by check through the mails was not mandatory, that there was no restriction to prevent the shareholder from receiving the dividends in 1929, and that the dividends were taxable for that year.

* * * The decision is to be regarded as an application of the rule long followed by the Bureau of treating a dividend as taxable income for the year in which it first becomes subject to the unqualified demand of the stockholder. Consideration of the particular facts and circumstances governing the payment is of course required in applying the rule.

Inasmuch as the above cited comment of the respondent is predicated in large part upon the opinion of the Board in *Frederick S. Peck*, 29 B. T. A. 872, it should be noted that the report published in 29 B. T. A. 872, carries a footnote as follows: "This opinion was recalled in conformity with *Avery* v. *Commissioner*, —— U. S. —— (April 30, 1934)." The explanation of this footnote is that the Board reached the conclusion before entering its decision that the first published opinion was in error and accordingly the decision of the Board entered thereafter was in accordance with the decision of the Court in *Avery* v. *Commissioner, supra*.

It seems to us that the Supreme Court, in deciding the *Avery* case, has not relied upon the facts in that case which, like the facts in the *Adams* case, might serve to distinguish it from such cases as *Commissioner* v. *Bingham*, 35 Fed. (2d) 503, and has decided that where dividends are declared prior to the end of the year but are to be and are paid by checks mailed by the corporation so late in the year that they are not received by the stockholder until the following year, such dividends are taxable to a stockholder on the cash receipts and disbursements basis in the year when the check is received. Thus, as we interpret the decision of the Supreme Court in the *Avery* case, it is dispositive of the present issue and upon the authority of it the petitioner's contention that the dividends in question are taxable to him for 1930 and not for 1929 is sustained.

Issue (3). In 1929 the petitioner Edward S. Harkness was a stockholder of record of the American Telephone & Telegraph Co. and of the Atchison, Topeka & Santa Fe Railway Co. As a stockholder of the first named company he received, in 1929, 29,216 rights to subscribe to $486,933.33 par amount of 4½ percent convertible 10-year debenture bonds of the company at par. In 1929 the petitioner sold one of such rights for $4 which he reported in his income for that year. The remaining 29,215 rights the petitioner exercised on June 28, 1929, by the purchase of $486,900 par value of the bonds, paying therefor the amount of $486,900. The fair market value of the 29,216 rights at the date of issuance to the petitioner on May 10, 1929, was $166,160.31.

In his income tax return for 1929 the petitioner reported the amount of $164,334.38 representing the fair market value of the 29,216 rights as a dividend distribution. In determining the deficiency herein the respondent increased the reported fair market value of the rights to $166,160.31, which amount he included in the petitioner's income as a dividend distribution. The fair market value of the bonds as of the date of the issuance of the rights and at the time of the exercise of the rights was $134.75 and $139.875, respectively, for each $100 par value of bonds.

As a stockholder of the Atchison, Topeka & Santa Fe Railway Co., the petitioner, in 1929, received 110 rights to subscribe to 4½ percent debenture convertible bonds of the company at par at the rate of $1,000 par value of bonds for each 80 rights. The fair market value of the bonds, at the date of the authorization of the rights and bonds, was $124.50 for each $100 par value of bonds. The petitioner, on February 2, 1929, exercised 80 of the rights by purchasing $1,000 par value of bonds and paying therefor $1,000. He sold the remaining 30 rights for $58.50. In his income tax return for 1929 the petitioner reported as a dividend $330 on account of his receipt of 110 rights and the amount of $58.50 received upon the sale of the 30 rights. In his determination of the deficiency herein the respondent increased the reported value of the 110 rights, resulting in an addition to income of $75.63. The fair market value of the 110 rights at the times in question was $323.12, or $2.9375 per right.

With respect to this issue the only question now in dispute is whether the rights issued to the petitioner in 1929 to subscribe to bonds of the American Telephone & Telegraph Co. and the Atchison Topeka & Santa Fe Railway Co., which rights were not sold by him in that year but were exercised, constituted taxable income to the extent of their agreed fair market value. This identical question has been decided in the negative in *T. I. Hare Powel*, 27 B. T. A. 55, and *Robert C. Cooley*, 27 B. T. A. 986. We held in those cases, both of which also involved the rights issued by the American Telephone & Telegraph Co., that the receipt of rights to subscribe for convertible bonds is not the receipt of income to the extent of the fair market value of such rights. In accordance with our decisions in those cases this issue is determined in favor of the petitioner.

Issue (4). This issue has been settled by stipulation, the respondent now conceding that the capital net gain of the petitioner, Edward S. Harkness, as determined by him in the notice of deficiency for 1929, should be decreased by the amount of $90,000.

Issue (5). On May 29, 1917, the petitioner, Edward S. Harkness, acquired all the stock of the Atheneum Co., consisting of 3,000 shares and there was no change in ownership of the stock during the times here in question. On July 16, 1930, the stockholders of the company entered into an agreement that the corporate existence of the company should be terminated. The preliminary certificate of dissolution was filed in the office of the Secretary of State of Connecticut on August 4, 1930. Thereafter, a notice of the proposed dissolution was duly published as provided by the laws of the State of Connecticut. The final certificate of dissolution, dated January 5, 1931, was filed with the Secretary of State of Connecticut on January 7,

1931. Prior to December 31, 1930, the petitioner received a final liquidating dividend from the company in the amount of $17,325.90. On March 14, 1931, the petitioner paid Federal income tax of the company for 1930 in the amount of $2,181.15. In his income tax return for 1931 the petitioner reported the amount of $17,325.90 less $2,181.15 as an ordinary dividend, subject only to surtax. In his determination of the deficiency herein for 1930 the respondent included in the petitioner's income the amount of $17,325.90 representing the amount of his profit from the liquidation of the Atheneum Co., which amount he held subject to both normal and surtax. In such determination the respondent did not allow the deduction of the amount of $2,181.15 Federal income tax of the Atheneum Co., for 1930 which the petitioner paid in March 1931. In the respondent's deficiency notice the item of $17,325.90 appears under the caption " Interest on foreign bonds." It is now conceded that this was error and that the amount should have been designated a liquidating dividend or profit derived upon liquidation of the Atheneum Co. It is further agreed that the petitioner's profit from the liquidation of the Atheneum Co. was $17,325.90 less $2,181.15, or $15,143.75.

The questions for our determination are whether the profit received by the petitioner upon the liquidation of the Atheneum Co. in the agreed amount of $15,143.75 was income to him in 1930 or 1931, and, if it was income in 1930, which is the only one of those years before us, whether the petitioner is entitled to have the tax thereon computed at the net capital gain rate.

In our opinion the respondent has correctly determined that the petitioner is taxable in 1930 upon his profits from the liquidation of the company. The Atheneum Co. was completely liquidated in 1930 except that the final certificate of dissolution was not filed with the Secretary of State of Connecticut until the following January 7, 1931. This fact, we think, is immaterial. In *Harry A. Dockum*, 11 B. T. A. 39, we said:

On January 2, 1919, notice of the dissolution was mailed to the Secretary of State and he entered it of record on January 6, 1919.

The fact that the corporation did not go out of existence until notice was given has no bearing upon the case. The corporation could not have transferred its assets after it ceased to exist.

We find that the petitioner . acquired the assets of the corporation before January 1, 1919, and any income which the petitioner may have realized as a result of that transaction accrued in 1918.

An information return, Form 1099, attached to the income tax return of the Atheneum Co. for 1930, shows the payment to Edward S. Harkness in that year of a dissolution dividend in the amount of $17,325.90. As the parties have agreed, that amount should be reduced, in determining the petitioner's taxable gain, by the amount

of the taxes of the corporation which the petitioner paid in the following year. *O. B. Barker*, 3 B. T. A. 1180; *E. F. Cremin*, 5 B. T. A. 1164; *E. M. F. Leflang*, 6 B. T. A. 4; *Takamine Laboratory, Inc.*, 7 B. T. A. 963.

Is the petitioner entitled to have the profits in question taxed to him at the capital net gain rates under the provisions of sections 115 (c) and 101 of the Revenue Act of 1928, and article 625 of Regulations 74? The petitioner admittedly held the stock of the Atheneum Co. for more than two years and was therefore entitled to report the gain from its disposal, in the final liquidation of the company, as a capital net gain. The petitioner reported all his capital gains in 1930 as capital net gains. The $15,143.75 gain from the liquidation of the Atheneum Co. falls in the same category and the petitioner is entitled to have this amount also taxed as capital net gain.

Issue (6). The petitioner, Edward S. Harkness, was the executor and sole residuary legatee under the will of his mother, Anna M. Harkness, who died March 27, 1926. During 1926 to 1928, inclusive, Federal estate taxes in the aggregate amount of $12,051,463.26 and interest in the aggregate amount of $140,582.88 were paid by the estate. On March 11, 1930, a refund of such taxes and interest in the respective amounts of $185,914.82 and $5,033.42 was made, together with interest thereon in the amount of $21,789.02. These amounts the petitioner, as executor and sole residuary legatee, received and deposited to his own account. In his income tax return for 1930 the petitioner reported as income the interest item of $21,789.02 and the balance of the refund, amounting to $190,-948.24, he deducted from the gross amount of taxes which he was entitled to claim as a deduction in his return for that year. The result of the petitioner's treatment of the $190,948.24 item was to include that amount in his income for that year. In his determination of the deficiency herein the respondent has made no change in the treatment accorded these items in the petitioner's return. The income tax returns of the estate of Anna M. Harkness for the years 1926, 1927, and 1928, after the deduction of Federal estate taxes paid in those years, disclosed an excess of deductions over income for each year in the following amounts:

| | |
|---|---:|
| 1926 | $45, 230. 08 |
| 1927 | 1, 076, 057. 37 |
| 1928 | 3, 478, 022. 92 |

In our opinion the item of $190,948.24 was not taxable income to the petitioner. The estate taxes paid by the Anna M. Harkness estate were a charge against the corpus of the estate. *United States* v. *Woodward*, 256 U. S. 632; *Everett J. Esselstyn, Executor*, 26 B. T. A. 181. A part of such taxes when refunded to the petitioner

as the sole residuary legatee served merely to increase the amount of his legacy from the estate and was in no sense income of the year when refunded. *Iten Biscuit Co.*, 25 B. T. A. 870; *Mente & Co.*, 29 B. T. A. 804. See also *Mary W. Leach*, 16 B. T. A. 781; affd., 50 Fed. (2d) 371; and *Bettie Matthews*, 21 B. T. A. 96.

It was therefore error for the respondent to include the item of $190,948.24 in the petitioner's income for 1930.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*