KRAMER, Rec., v. EYSENBACH, Adm'x.

*96 P. 2d 1049.*

No. 28627.   Oct. 17, 1939.

Rehearing Denied Dec. 19, 1939.

N. E. McNeill, of Tulsa, for plaintiff in error.

Chas. L. Yancey, G. C. Spillers, and Kavanaugh Bush, all of Tulsa, for defendant in error.

RILEY, J.   Philip J. Kramer, receiver of the Western Natural Gas Company, filed an action against Bessie C. Eysenbach, administratrix of the estate of O. K. Eysenbach, deceased, to recover certain sums allegedly disbursed to Eysenbach improperly at the time the above corporation ceased to do business.

Plaintiff below alleged his appointment as receiver by the court for the purpose of collecting all claims the corporation has against its directors and stockholders, and an order authorizing this action.

It was further alleged that E. A. Smith entered into a contract with O. K. Eysenbach, president of the Western Natural Gas Company, for the sale of its properties; that said properties w e r e sold through the efforts of the said Smith for the sum of $200,000; that Smith was

paid the sum of $5,000 in September, 1930, that O. K. Eysenbach died October 3, 1932; that the balance of the commission remaining unpaid, Smith filed suit against the Western Natural Gas Company, and recovered judgment in the amount of $5,000, plus interest, which judgment became final; that execution was issued and returned unsatisfied; that Bessie E. Eysenbach, wife of O. K. Eysenbach, deceased, was appointed administratrix of his estate; that at the time of the sale of the properties, O. K. Eysenbach, deceased, was president of the Western Natural Gas Company, Bessie E. Eysenbach was vice-president, and E. T. Tucker was secretary-treasurer; that the three last above named constituted the board of directors, and were the only stockholders.

It is further alleged that the properties sold constituted the entire assets of the Western Natural Gas Company, and that the $200,000 received therefor was distributed among the directors themselves as stockholders; that in excess of $100,-000 was distributed to O. K. Eysenbach prior to his death and became a part of his personal estate; that the withdrawal of the entire assets and capital stock of the corporation by the directors without making provision for the payment of creditors' claims was a fraud against said creditors and rendered the directors liable to the corporation for the benefit of the creditors for the sum illegally withdrawn; and that the distribution of said funds to O. K. Eysenbach and the commingling of the same with his personal property rendered his estate liable to the corporation for the benefit of the creditors in like manner as the directors.

The defendant Bessie C. Eysenbach, administratrix of the estate of O. K. Eysenbach, deceased, filed a separate demurrer to the petition alleging as grounds therefor that the facts alleged were insufficient to state a cause of action, and that the cause of action did not survive as against the estate of O. K. Eysenbach, deceased. From a judgment sustaining said demurrer and dismissing the petition, plaintiff appeals.

Section 9763, O. S. 1931, 18 Okla. Stat. Ann. § 106, provides as follows:

"The directors of corporations must not * * * divide, withdraw, or pay to the stockholders, or any of them, any part of the capital stock; nor must they * * * reduce or increase their capital stock, except as specially provided by law. For violation of the provisions of this section, the directors under whose administration the same may have happened * * * are, in their individual and private capacity, jointly and severally liable to the corporation, and to the creditors thereof, in the event of its dissolution, to the full amount of the capital stock so divided, withdrawn, paid out, or reduced, * * * and no statute of limitations is a bar to any suit against such directors for any sums for which they are made liable by this section. * * *"

In the early case of Collins v. Kaw City Mill & Elevator Co., 26 Okla. 641, 110 P. 734, the following was quoted with approval from the case of Chicago, R. I. & P. Ry. Co. v. Howard, 7 Wall. 392, 19 L. Ed. 117:

"Equity regards the property of a corporation as held in trust for the payment of the debts of the corporation, and recognizes the right of creditors to pursue it into whosesoever possession it may be transferred, unless it has passed into the hands of a bona fide purchaser; and the rule is well settled that stockholders are not entitled to any share of the capital stock nor to any dividend of the profits until all the debts of the corporation are paid. * * * Even the sale of the entire capital stock of the company and the division of the proceeds of the sale among the stockholders will not defeat the trust nor impair the remedy of the creditors, if any debts remain unpaid, as the creditors in that event may pursue the consideration of the sale in the hands of the respective stockholders and compel each one, to the extent of the fund, to contribute pro rata towards the payment of their debts out of the moneys so received and in their hands, * * * but if the fund has been distributed among the stockholders, or passed into the hands of other than bona fide creditors or purchasers, leaving any debts of the corporation unpaid, the established rule in equity is that such holders take the fund

charged with the trust in favor of creditors, which a court of equity will enforce, and compel the application of the same to the satisfaction of their debts. * * *"

See, also, Union Coal Co. v. Wooley, 54 Okla. 391, 154 P. 62.

On demurrer the allegations of the petition are considered as true. The petition states facts sufficient to constitute a cause of action.

We now proceed to the most perplexing issue in this appeal, namely, does this cause of action survive against the personal representative of O. K. Eysenbach, deceased?

Defendant strenuously contends (1) that plaintiff's cause of action is not a cause which would survive at common law, and (2) that the action is one arising solely by virtue of section 9763, O. S. 1931, that said statute is penal, and that an action based thereon is tortious in nature and does not survive.

Research on this question as well as the briefs herein reveal a sharp conflict of authority, not only among the various jurisdictions, but within some of the jurisdictions themselves. We are convinced, however, that much of this apparent conflict is due to varying statutory expressions, and at times to a failure to properly understand and follow the evolution of the common-law rule of survivor of actions.

Originally, u n d e r the common-law rule that personal actions died with the person, it was held that an action arising out of the breach of a contract did not survive. But this rule was later relaxed to permit the survival of actions based upon the breach of a contract, where the damages sustained by such breach were not personal in their nature.

Contracts are of two types, express or implied. Implied contracts fall into two general classifications, t h o s e implied from the facts and circumstances, and those implied in law, commonly known as quasi contracts. Of the latter it is stated in 6 R. C. L. 589, as follows:

"As has been well said, in the case of consensual contracts the agreement defines the duty, while in the case of quasi contracts the duty defines the contract. The duty, which thus forms the foundation of a quasi contractual obligation, is frequently based on the doctrine of unjust enrichment. Accordingly it has been said that neither a statute nor a rule of law raises an implied promise. There must always be the fact of a consideration outside of and in addition to the statute or the rule of law; and the promise is implied rather from the consideration than from the statute. The statute or the rule establishes the duty, but the consideration raises the implied promise to perform that duty."

The plaintiff's cause of action is based upon the wrongful action, in which the deceased director participated, whereby funds in trust which should have been paid to the creditor Smith were distributed to the director stockholders. By this action the director stockholders were unjustly enriched in the amount of the outstanding creditors' claims. The promise to repay this amount is implied in law.

The question now arises, Does an action based upon quasi contract survive at common law?

In 1 C. J. S. 186, it is said:

"There may be a survival of an action or cause of action on an implied or quasi contract, even though it is founded in tort."

In Am. Jur. 72, the rule is stated thus:

"In the case of a tort directly resulting in the wrongful acquisition of personal property, the law imposes on the wrongdoer the duty of returning that property to the owner. This duty may be treated as a quasi contract, and the neglect to perform it may become a breach of such contract * * * and so, for determining the question of survival, at common law, the substantial cause of action may properly be treated as founded in contract."

The rule was expressed by this court in Columbia National Life Ins. Co. v. Lemmons, 96 Okla. 228, 222 P. 255, as follows:

"Under the common-law rule, where a cause of action is founded in tort, unconnected with contract, and affects the

person and not the estate, the action dies with the person; but when the action is founded on contract, although nominally laid in tort, the action survives. The line of demarcation at common law, separating those actions which survive from those that do not, is that in the first the wrong complained of affects primarily and principally property rights, and the injuries to the person are merely incidental, while in the latter the injury complained of is to the person and the rights of property affected are merely incidental."

Also in 1 R. C. L. at p. 44, it is said:

"Where, however, the cause of action against an officer of a corporation arises from a breach of a fiduciary relation by which he enriched himself, his death does not abate the action."

O. K. Eysenbach, following the sale of the entire assets of the Western Natural Gas Company, became clothed with the duties of a trustee for the funds received to the extent of creditors' claims outstanding. Distribution of said funds to director-stockholders without retention of an amount sufficient to pay outstanding creditors was a breach of a fiduciary relation, and the death of O. K. Eysenbach does not abate this action based thereon.

Nor are we able to agree with defendants' contention that section 9763, supra, is penal in the sense that the cause of action herein will not survive.

Defendant cites the cases of Cairo Meal & Cake Co. v. Brigham, 268 Ill. App. 510; Western Mortgage & Guaranty Co. v. Gray et al. (Cal.) 8 P. 2d 1016; Continental Oil Co. v. Montana Concrete Co. (Mont.) 207 P. 116, and Butler v. Peters (Mont.) 205 P. 249, in support of her contention.

It is important to note that in the three cases first cited above, it was sought to hold the directors liable because of debts created in excess of the capital stock, and in the last case it was attempted to impose liability because of failure to file an annual report.

In none of the cases cited was it shown that the director or his estate was enriched by wrongful act as is true in the instant case. Liability sought here is not a penalty, but is merely a compensation, a reimbursement, or a reparation to the corporation on behalf of its creditors for money wrongfully distributed to the directors themselves. No case is cited wherein the question of unjust enrichment of the director was involved. This element distinguishes the instant case from the cases cited by defendant.

This court in the case of Gardner v. Rumsey, 81 Okla. 20, 196 P. 941, pronounced a statute of the state of Arkansas, similar to section 9763, supra, to be penal in nature. Four Justices concurred in the opinion and one specially concurred. The following is quoted from the specially concurring opinion:

"The trial court properly sustained the demurrer on the ground of misjoinder of causes of action. It was also correct in sustaining the demurrer on the ground that the petition failed to state a cause of action in favor of the plaintiffs and against the defendant, in that the petition did not plead the statute of Arkansas on which plaintiffs relied to recover from the defendant. *The said statute is not in the record, therefore, it is not before this court to construe whether it is penal or remedial.*"

The liability sought to be enforced under the Arkansas statute was for failure to file a certificate, and therefore is distinguishable from the instant case.

In Western Mortgage & Guaranty Co. v. Gray, supra, the Supreme Court of California was careful to point out that in some jurisdictions, "* * * it is held that the liability under the statute is contractual in character, * * *" and cited the case of Colcord v. Granzow, 137 Okla. 194, 278 P. 654, as so holding. In the last cited case it was held that section 9763, supra, was remedial as to creditors, and we see no valid reason why it should not be construed as remedial when the corporation is proceeding in behalf of and for the benefit of creditors.

In the case of Rogers v. Bonnett, 2 Okla. 553, 37 P. 1078, the Territorial Supreme Court considered the statute which was re-enacted at statehood, and is

now known as section 9763, supra. But the controversy involved there arose when one of the directors who had discharged the liability arising under the statute sought to enforce contribution from another director. Obviously the case cannot be cited as authority to hold that the statute is penal under the facts of this case.

Defendant contends that if the claim sought to be enforced here is based on tort, then it is barred by the two-year statute of limitations. This is untenable because section 9763 provides "* * * no statute of limitations is a bar to any suit against such directors for any sums for which they are made liable by this section."

Defendant also contends that if the claim herein is based on contract, it was necessary to present the claim to the administratrix in order to prevent its being barred by the statute of nonclaim.

This contention is likewise untenable, for in the case of American Trust Co. v. Chitty, 36 Okla. 479, 129 P. 51, this court said:

"A claim arising on contract must be presented to the administrator for allowance or rejection before suit can be maintained thereon, but not so where the claim arises in tort or other wrongful act of the deceased."

The case is reversed, with directions to overrule the demurrer and proceed accordingly.

WELCH, V. C. J., and GIBSON, DAVISON, and DANNER, JJ., concur.