V. V. Harris, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 99027.   Promulgated February 26, 1941.

*Charles H. Garnett, Esq.*, for the petitioner.
*Wilford H. Payne, Esq.*, for the respondent.

714

OPINION.

Mellott: Petitioner contends that his stock in the Arcade Co. became worthless during the calendar year 1935, as a result of which he sustained a loss, deductible in full as an ordinary loss, in an amount equal to the cost of the stock. In his income tax return he deducted, as an ordinary loss, the difference between the cost of the stock ($32,220) and the aggregate of the liquidating dividends ($1,985.94) or $30,234.06. The respondent determined that the loss was a capital loss, deductible only to the extent authorized by subparagraphs (a) and (d) of section 117 of the Revenue Act of 1934.[1] The amount so computed ($9,956.74) was allowed as a capital loss.

---

[1] SEC. 117. *CAPITAL GAINS AND LOSSES.*

(a) General Rule.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

\*     \*     \*     \*     \*     \*     \*

40 per centum if the capital asset has been held for more than 5 years but not for more than 10 years;

30 per centum if the capital asset has been held for more than 10 years.

\*     \*     \*     \*     \*     \*     \*

(d) Limitation on Capital Losses.—Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges. \* \* \*

In the original petition it is alleged the respondent erroneously determined that the loss was a capital loss. In an amended petition it is alleged that petitioner "is entitled as a matter of law to deduct the full sum of his cost * * * as a loss due to said stock having become worthless * * *"; that "when the Prudential Life Insurance Company began proceedings to foreclose its mortgage on the Main Street Arcade Building, which was the only asset of value the corporation had, and the fact became apparent that said mortgagee intended to enforce its mortgage lien by foreclosure and a sale of that property, it was then established that the * * * company was insolvent and its stock worthless, for that its indebtedness then greatly exceeded the actual or any reasonably possible value of all of its assets; that all dividends distributed by the * * * company to its stockholders after that date were liquidating dividends, for that they were necessarily paid out of the corporation's capital; and that the amount of such dividends received by the petitioner were not his property, but were so received in trust for creditors of the corporation, for by operation of law he became a trustee, and the amount of such dividends a trust fund in his hands, for the benefit of the creditors of the corporation."

Respondent denies that he erred in determining the deficiency in tax. In an amended answer he alleges that if the loss is not a capital loss resulting from the liquidation of the corporation then petitioner is entitled to no deduction from gross income for the year 1935 on account of his investment in the stock because it did not become worthless during that year.

It is doubtful if the mere institution of the suit to foreclose the mortgage and the appointment of a receiver to collect the rents constituted an "identifiable event" (*United States* v. *White Dental Manufacturing Co.*, 274 U. S. 398) establishing worthlessness of the stock of the corporation which owned the real estate. Cf. *Peter Doelger Brewing Co.*, 22 B. T. A. 1176; *William H. Redfield*, 34 B. T. A. 967; *Olds & Whipple* v. *Commissioner*, 75 Fed. (2d) 272. The corporation itself sustained no deductible loss until the property was sold. *Helvering* v. *Hammel*, 311 U. S. 504. This did not occur until 1936. It is not contended that there was any abandonment of the property by the corporation. *Collateral Mortgage & Investment Co.*, 37 B. T. A. 630. Indeed the contrary appears. The corporation directed its attorneys to represent it "in the foreclosure proceedings and endeavor to delay the final sale of the property with the hope that there might be a considerable advance in real estate before that time" Had the hoped for advance occurred, it is possible that no loss would ever have been sustained by the corporation.

But our question is not whether the corporation sustained a loss in 1935. It is: Did petitioner's stock become worthless during that year? The test to be applied is a practical rather than a legal one (*Lucas* v. *American Code Co.*, 280 U. S. 445) and petitioner has the burden of proof.

In support of his contention that the dividends received by him were not his property but were received in trust for creditors of the corporation, petitioner cites several Oklahoma cases applying the rule enunciated by Justice Story in *Woods* v. *Dummer*, 3 Mason, 308; 30 Fed. Cases 435, and by the Supreme Court in *Sanger* v. *Upton*, 91 U. S. 56. It is thus stated by the Supreme Court of Oklahoma:

> Equity regards the property of a corporation as held in trust for the payment of the debts of the corporation, and recognizes the right of creditors to pursue it into whosesoever possession it may be transferred, unless it has passed into the hands of a *bona fide* purchaser. * * * if the fund has been distributed among the stockholders * * * leaving debts of the corporation unpaid, the established rule in equity is that such holders take the fund charged with the trust in favor of creditors, which a court of equity will enforce * * *. *Kramer* v. *Eysenbach*, 186 Okla. 234, 96 Pac. (2d) 1049.

The rule is sound and will be applied in proper cases. Thus in *Benjamin E. May*, 35 B. T. A. 84, it was held that stockholders receiving the assets of a corporation upon its liquidation were liable, as transferees, for its unpaid income taxes. In *O. B. Barker*, 3 B. T. A. 1180, it was held that a taxpayer need not include in his gross income the portion of a liquidating dividend which he had been compelled to pay out on account of taxes assessed against the liquidating corporation. A similar conclusion was reached in *E. F. Cremin*, 5 B. T. A. 1164; *J. G. Tomlinson*, 7 B. T. A. 961, and *Edward F. Harkness*, 31 B. T. A. 1100. In *Carey Van Fleet*, 2 B. T. A. 825, it was held that a lawyer, keeping his books and making his return of income upon a cash basis, need not include in gross income his portion of a fee collected by the partnership of which he was a member where the firm had acknowledged that it was not entitled to the fee at the time it was paid.

It will be noted that in each of the cited cases the taxpayer either had paid out the amount which had been received or, as in the *Van Fleet* case, had acknowledged that the amount was being held in trust. This petitioner, however, received the $1,985.94 "under a claim of right and without any restriction as to its disposition." *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359. He commingled it with his other property, still retains it (or in any event was still retaining it at the date of the hearing), and has always treated it as belonging to him. In his return of income for the year in

which it was received he considered it to be a partial return of his capital investment in the stock of the corporation, computing his loss to be the difference between the cost of the stock and the aggregate of the dividends. In his petition he alleges that the corporation had no earnings or surplus from which ordinary dividends could be declared and that the amount distributed consisted of the cash on hand and collections on notes and accounts. It may be that the corporation itself or its creditors could, in an appropriate action, compel petitioner to pay over the amount distributed to him; but no attempt has been made to do so. Petitioner touched the whole question only very generally at the hearing. His testimony was directed primarily to the value of the real estate. Under cross-examination, however, he admitted that between $1,900 and $2,000 was received by him; that the entire amount was retained; and that so far as he knew he would never be required to pay over any portion of it to anyone. We know of no reason why we should not consider the payments precisely as they were considered by the corporation and its stockholders—as liquidating dividends. Incidentally it may be pointed out that only if we do so can petitioner be allowed any deduction from gross income during the taxable year; for in our opinion the evidence indicates that the stock had as much value in 1935 as it had in 1934; and, if it were not worthless at the beginning of 1935, it is questionable if it became entirely worthless earlier than 1936.

In our opinion petitioner correctly computed the amount of his loss upon the Arcade Co. stock in his return of income for the calendar year 1935. He erred, however, in failing to treat it as a capital loss. *White* v. *United States*, 305 U. S. 281; *Helvering* v. *Weaver Co.*, 305 U. S. 293; *Martin General Agency* v. *Commissioner*, 101 Fed. (2d) 165; *Inter-State Grocery Co.*, 39 B. T. A. 182. The Commissioner committed no error in determining the deficiency.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

Hill, dissenting: I respectfully dissent from the conclusion reached in the majority opinion. The evidence establishes, I think, that petitioner's loss was sustained in the taxable year 1935, not as a result of the liquidation of the corporation, as the majority holds, but from the fact that petitioner's investment in the corporation's stock became wholly worthless in that year when suit was instituted to foreclose the mortgage and sell the real estate which constituted the sole asset of substantial value owned by the corporation.

It is true that the corporation was wholly insolvent, the value of its assets being far less than the amount of its liabilities, in the years immediately preceding the taxable year, and its stock therefore had no liquidating value either in 1934 or 1935. Nevertheless, it can not be said that petitioner sustained his loss prior to the taxable year merely because the stock had no liquidating value. Undoubtedly the stock had a substantial potential value up to the time the foreclosure proceeding was instituted. Cf. *Sterling Morton*, 38 B. T. A. 1270; affd., 112 Fed. (2d) 320.

The corporation's only business was the operation of the Arcade Building in Oklahoma City. It had no other source of income, but it had been able to meet all semiannual installments of principal and interest due on its mortgage indebtedness up to July 1, 1932, and it also had paid $1,538.01 on the interest installment due July 1, 1933. Its net earnings for 1935 increased materially over its net earnings for 1934. At the beginning of the taxable year the corporation was actively engaged in carrying on its business, and there was a reasonable hope and expectation that if it could continue in possession of its property and operate its business, its profits might further increase to the benefit of the stockholders. Also, there was the hope that real estate values would increase so that ultimately the value of its assets might exceed its liabilities and its stock would have a liquidating as well as potential value. However, when the foreclosure proceeding was instituted on May 2, 1935, these hopes and expectations were definitely terminated. Under the conditions existing, the corporation's real estate could not be sold for enough to satisfy the mortgage debt; in fact, the mortgagee obtained a deficiency judgment in excess of $25,000. The filing of the foreclosure suit, in my opinion, was the "identifiable event" which established worthlessness of the corporation's stock and the incidence of petitioner's loss.

Since petitioner's loss resulted from the stock having become worthless in 1935, the amount is allowable in full as an ordinary loss, and is not subject to the limitations of section 117 of the Revenue Act of 1934. I am impelled to this conclusion for the further reason that the so-called liquidating dividends were not such in fact. So much appears to be admitted, at least by inference, in the majority opinion. It is true that the distributions made by the corporation in 1935 were designated by the directors as liquidating dividends, but the name by which they were called is immaterial; we must look to the facts to determine their true nature. The distributions were necessarily made out of capital, since the corporation was wholly insolvent. Its capital in such circumstance

constituted a trust fund for the benefit of its creditors, and could not be legally distributed to the stockholders in liquidation or otherwise. See section 9763, Oklahoma Statutes, 1931. And upon distribution the funds did not become the property of the stockholders but in their hands an involuntary or constructive trust by operation of law, payable upon demand to the beneficial owner, the insurance company creditor. This doctrine is so well established and so universally applied that citation of authorities in addition to those referred to in the majority opinion is not deemed necessary here.

The fact that prior to the hearing of this case the insurance company had not made any demand for repayment to it of the funds distributed is wholly immaterial. Under the Oklahoma statute the right of a creditor to demand repayment of such funds is not barred by limitations, and may be made at any time. In view of the apparent emphasis laid by the majority opinion on the fact that prior to the hearing of this proceeding no demand had ever been made upon petitioner by the Arcade Co. or the insurance company to repay any portion of the amounts distributed to him, it is interesting to note that on brief counsel for petitioner states that "Since the trial, and no doubt because of facts developed at the trial, the Prudential Insurance Company has demanded of petitioner and other stockholders, the amounts they received in those dividend distributions in 1935. Petitioner's counsel knows of no defense to that demand."

In the majority opinion the trust fund doctrine is recognized as a sound rule, and that it should be applied in proper cases. In that connection, the following decisions of this Board, among others, are cited. In *Benjamin E. May*, 35 B. T. A. 84, it was held that stockholders receiving the assets of a corporation upon liquidation were liable as transferees for its unpaid income taxes, a fund left for payment of creditors having been dissipated. In *O. B. Barker*, 3 B. T. A. 1180, it was held that a taxpayer was not subject to tax on that portion of a liquidating dividend paid on taxes assessed against the corporation. To the same effect see *E. F. Cremin*, 5 B. T. A. 1164; *J. G. Tomlinson*, 7 B. T. A. 961; and *Edward S. Harkness*, 31 B. T. A. 1100. The cited cases are sought to be distinguished on the ground that in each of them the taxpayer had actually paid out the amount received, while in the instant proceeding the petitioner received the amount of the so-called liquidating dividends under a claim of right and without restriction as to its disposition; further that petitioner commingled the amount so received with his other property, still retained it at the date of the hearing, and has always treated it as belonging to him. With a single exception, precisely the same state-

ments may be made in respect of each of the cases above cited. In each of them, so far as disclosed by the reports, the taxpayer received the corporate distribution under a claim of right and without restriction as to its disposition, commingled the fund with his other property, treated it as belonging to him, and retained it until compelled to pay it over in discharge of tax liability of the corporation.

The only material ground upon which the cases referred to may be distinguished from the case at bar lies in the fact that up to the date of the hearing, no demand had been made on this petitioner, to pay over to the corporation or its creditor the amounts received as liquidating dividends. Must the application of the trust fund doctrine *in favor of the taxpayer*, then, be held to depend solely upon the fortuitous circumstance of repayment of the fund to a creditor prior to hearing of the tax proceeding before the Board? Would the rule have been applied differently in the majority opinion if it had been made to appear that the amounts received by petitioner had been repaid to the insurance company, or a demand therefor had been made prior to the hearing? And does it follow that because such repayment or demand was not so made, notwithstanding liability therefor still existed, that the so-called liquidating dividends received by petitioner must be regarded for tax purposes as his property? The rule has never been so interpreted in its application *against taxpayers* in the numerous decisions of this Board involving transferee liability for corporate taxes, of which *Benjamin E. May, supra*, is an example. Uniformly we have held in such cases that liquidating dividends did not constitute property of the tranferee, but trust funds to the extent of the unpaid taxes, and no inquiry was made, it being obviously immaterial, whether such distributions were received under claim of right and without restriction as to disposition, whether or not commingled with other funds, or whether or not treated by the transferees as belonging to them. And it is apparent, of course, from the nature of such proceedings that the recipients had not prior thereto parted with the funds in payment of creditors' claims or tax liability of the corporations. In the absence of any elements of estoppel, I can find no sound reason for applying the doctrine differently in the present case, *in favor of the taxpayer*, than it is applied generally in transferee cases *in favor of the Government*.

In my opinion, the decision here should be for petitioner.