Thomas H. Hannaford v. Commissioner.
Hannaford v. Commissioner
Docket No. 63844.
United States Tax Court
T.C. Memo 1960-78; 1960 Tax Ct. Memo LEXIS 211; 19 T.C.M. (CCH) 409; T.C.M. (RIA) 60078; April 22, 1960
*211 Raymond F. Barrett, Esq., and William G. Shea, Esq., 60 State Street, Boston, Mass., for the petitioner. John M. Doukas, Esq., and Charles T. Shea, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income tax and additions to tax as follows: Additions to Tax
Section 293(a),
Revenue Act
of 1938
Section 293(a),
Year
Deficiency
I.R.C. 1939
1938
$18,501.13
$1,039.87
1940
12,832.27
641.61
1941
4,862.20
243.11
1943
51,401.87
2,570.09
1946
1,511.60
1947
125.36
1948
1,772.19 1942 is involved by reason of the Current Tax Payment Act. The issues said to be remaining are: (1) and (2) Whether petitioner's liquidation of two completely controlled corporations, and his receipt and assumption of their respective assets and liabilities, occurred in 1938; if so, whether in 1938 petitioner realized a long-term capital gain of $75,221.04 from these liquidations, and whether in 1938 petitioner realized additional income in the amount of $14,814.95 from items accrued by each of the corporations on their respective books as due petitioner; *212 (3) Whether unexplained deposits of $10,553.16 to petitioner's bank accounts in 1938 constituted taxable income in that year; (4) Whether assessment of the deficiency and addition to tax for 1938 is barred by the statute of limitations; this depends upon whether petitioner omitted from gross income in 1938 an amount properly includible therein which is in excess of 25 per cent of the gross income stated in his 1938 return; (5) Whether unexplained credits of $5,106.26, $10,644.85 and $7,187.68 to petitioner's drawing accounts in his sole proprietorship businesses in 1940, 1941 and 1942, respectively, constituted taxable income in those years; (6) Whether in 1940 and 1941 petitioner expended amounts up to $2,250 and $1,500, respectively, for travel and entertainment, and if so, whether such amounts constituted deductible business expenses in those years; (7) Whether petitioner realized a net profit of $9,009.46 in 1940 from a construction contract; (8) Whether in 1940 petitioner expended an amount of $778.10 for selling expenses, taxes, steel file and fee for land survey, and if so, whether such amount constituted a deductible business expense in that year; (9) Whether in *213 1940 petitioner expended the amount of $1,081.54 for salesman's expenses, and if so, whether such amount constituted a deductible business expense in that year; (10) Whether in 1940 and 1941 petitioner occupied as a personal residence an apartment in one of his rental-producing properties, and if so, whether the respective amounts of $1,191 and $600 represented deductible expenses or personal nondeductible expenses; (11) Whether the amount of $5,963.41 received by an attorney in 1941 upon settlement of petitioner's law suit constituted taxable income to petitioner in that year; (12) Whether in 1940, 1941 and 1942, petitioner expended the respective amounts of $400.96, $2,300 and $3,427.35 for legal expenses, and if so, whether such amounts constituted deductible business expenses in those years; (13) Whether in 1942 petitioner sustained abandonment losses in the amounts of $23,106.76 (Ryder, Terrel and Richard lots) and $8,750 (So. Braintree Plant); (14) Whether in 1942 the $21,800 purchase price of the Pantano Farm constituted a deductible business expense; (15) Whether certain obsolescence deductions claimed by petitioner, and disallowed by respondent, in 1942, were reasonable *214 in amount; (16) Whether petitioner received a constructive dividend of $3,166.46 from a controlled corporation in 1943; (17) Whether certain depreciation deductions claimed by petitioner, and disallowed by respondent, in 1940, 1942, 1943, 1946, 1947 and 1948, were reasonable in amount; (18) Whether in 1940, 1942 and 1943 petitioner realized income from the sale of assets in the respective amounts of $7,766.73, $2,233.79 and $468, as determined by respondent; (19) Whether in 1948 petitioner realized a $3,481.62 loss on the sale of certain securities; (20) Whether respondent properly reduced petitioner's basis in certain securities sold in 1948 in the amount of $848.63; and (21) Whether any part of any deficiency for 1938, 1940, 1941 and 1943 is due to negligence or intentional disregard of rules and regulations pursuant to section 293(a), Revenue Act of 1938 and section 293(a), I.R.C. 1939. Other adjustments referred to in respondent's deficiency notice were disposed of by stipulation or were conceded or abandoned in brief. Findings of Fact Petitioner Thomas H. Hannaford is an individual residing in South Weymouth, Massachusetts. He filed timely Federal income tax *215 returns for the years in issue with the then collector of internal revenue for the district of Massachusetts. Petitioner and respondent executed timely forms 872 for 1940, 1941, 1943, 1946, 1947, 1948, which extended the period of limitation upon assessment of income, "excess profits, or war profits" taxes to June 30, 1956. On March 7, 1944, petitioner and respondent executed form 872 which extended the period of limitation upon assessment of income tax for 1938 to June 30, 1956. On May 29, 1956, respondent mailed to petitioner a notice of deficiency for the years in issue. At all material times petitioner kept his books and filed his returns on a cash method of accounting and on a calendar year basis. Corporate Liquidations Issue No. 1. Long-term Capital Gain Issue No. 2. Ordinary Income During 1936, 1937 and 1938, petitioner was the sole stockholder of Crystal Concrete Corporation, hereafter called Crystal, and Braintree Realty Corporation, hereafter called Braintree. Crystal and Braintree were Massachusetts corporations with usual places of business at South Braintree and Braintree, Massachusetts, respectively. On January 25, 1933, Crystal Sand and Gravel Company *216 sold certain equipment and machinery to Crystal at a price of $41,300. On the same date, Crystal issued to petitioner its note in the amount of $41,300 bearing 6 per cent annual interest. A mortgage on the above property sold by Crystal Sand and Gravel Company to Crystal secured this note. On December 31, 1938, the fair market value of Crystal's assets and liabilities were as follows (in even dollars): Assets
Cash
$ 2,617
Accounts receivable
44,719
Delivery equipment
$85,910
Machinery and equip-
ment
52,373
Real estate
16,837
$155,122
Less: Depreciation reserve
41,713
$113,409
Prepaid items
1,182
Total
$161,928
Liabilities
Accounts payable
$ 50,778
Loans and mortgage payable
83,232
Accrued taxes
7,163
Accrued wages
315
Total
$141,489 The liability item designated as "Accounts payable" consisted of trade accounts payable in the amount of $13,431.65 and a credit balance in petitioner's drawing account in the amount of $37,347.01. On July 22, 1920, petitioner purchased the "Pond and Derby Street" property and on January 24, 1933, petitioner purchased the "Fogg" property. There were buildings *217 on both properties. On December 31, 1935, Braintree was incorporated. Petitioner transferred to it the "Pond and Derby Street" and "Fogg" properties. Prior to January 1, 1936, petitioner's cost bases for the "Fogg" building and the "Pond and Derby Street" property were $18,500 and $10,000, respectively. On December 31, 1938, the fair market value of Braintree's assets and liabilities were as follows (in even dollars): Assets
Cash
$ 19
"Fogg" building
$76,092
Hannaford building
95,124
Garage
20,000
Residential property
7,500
Boston plant
14,845
Land properties
61,035
Machinery and equip-
ment
25,952
$300,549
Less: Depreciation reserve
17,752
282,797
Total
$282,816
Liabilities *
Total
$162,141
Among the liabilities was a credit balance in petitioner's drawing account in the amount of $107,735.49. For the year 1936, Crystal accrued on its books the following items as due petitioner: Date
Item
Amount
2/29/36
Interest on mortgage
$ 7,702.65
12/31/36
Salary
5,200.00
12/31/36
Salary
5,200.00
12/31/36
Rental of equipment
5,793.33
12/31/36
Credit for loam and gravel
1,700.00
Total
$25,595.98
*218 Of this total petitioner reported $9,980 as taxable income for 1936 and consented to the inclusion of $9,213.33 as taxable income for 1938. Petitioner did not report the remaining amount of $6,402.65 as taxable income. For the year 1938, Crystal accured on its books the following items as due petitioner: Date
Item
Amount
12/31/38
Salary
$15,000.00
12/31/38
Interest for prior years
7,408.15
12/31/38
Interest
3,063.00
Total
$25,471.15 Of this total petitioner reported $18,063 as taxable income for 1938 and $2,263 as taxable income for a year prior to 1938. Petitioner did not report the remaining amount of $5,145.15 as taxable income. For the year 1937, Braintree accrued on its books $3,267.15 as interest due petitioner. Petitioner did not report this amount as taxable income. On Crystal's books and records there were two entries dated January 1, 1939 with the following respective explanations: "[First] To close out the Corporation's asset a/c as they appeared this date on Corporation's books of record in liquidation to T.H.H. [petitioner] Personal as per agreement of stockholders December 28, 1938 on file in Minute Book of Corporation per *219 E. A. Kane. * * *
"[Second] The liabilities and reserves were likewise closed out to Mr. Hannaford as he agreed to assume same in liquidation Per E. A. Kane." In Braintree's books and records there were two entries dated January 1, 1939 with the following respective explanations: "[First] To close out Corporation Assets in Liquidation to T. H. Hannaford per E. A. Kane. * * *
"[Second] To close out liabilities to be assumed by T.H.H. in liquidation per E. A. Kane." On October 9, 1940, petitioner filed a claim for refund of income taxes for the year 1939 and stated, inter alia, the following: "* * * [Petitioner] on December 31, 1938 took over the assets and assumed the liabilities of the Crystal Concrete Corporation and the Braintree Realty Co. Inc." This claim was subscribed and sworn to by petitioner. Crystal and Braintree discontinued their respective businesses on December 31, 1938. They were dissolved under the laws of Massachusetts in 1939. Respondent determined that petitioner liquidated Crystal and Braintree in 1938 and that petitioner's gains in 1938 from the respective liquidations were as follows (in even dollars): Fair market value
of assets re-
ceived in
liquida-
Long-term
Name of cor-
tion
Cost basis
capital
poration
(net)
of stock
gain
Crystal
$ 20,438
0
$20,438
Braintree
120,675
$65,893
54,782
*220 In addition, respondent determined that petitioner received taxable income in 1938 from unreported accruals realized on the respective liquidations of Crystal and Braintree as follows: Name of
corpora-
tion
Accrual
Amount
Crystal
Salary and interest, 1936
$ 6,402.65
Braintree
Salary and interest, 1937
3,267.15
Crystal
Salary and interest, 1938
5,145.15
Total
$14,814.95
Petitioner liquidated Crystal and Braintree in the taxable year 1938. Upon these liquidations, petitioner received and assumed the corporations' respective assets and liabilities in the taxable year 1938. Subsequent to the liquidations of Crystal and Braintree, petitioner operated the businesses formerly conducted by each under the respective names of Thomas H. Hannaford, d/b/a Crystal Concrete Company, sometimes hereafter called Crystal Concrete, and Thomas H. Hannaford, d/b/a Braintree Realty Company, sometimes hereafter called Braintree Realty. Issue No. 3 Unexplained Bank Deposits - 1938 In 1938, petitioner deposited $148,731.94 to his bank accounts at the Quincy Trust Company, Quincy, Massachusetts, and the Weymouth Trust Co., Weymouth, Massachusetts, later known *221 as the Granite Trust Co. Of these deposits an amount of $10,553.16 was unexplained and unidentified. Petitioner concedes that none of these unexplained and unidentified deposits was received from any source other than one or more of his business enterprises. Respondent determined that these unexplained deposits constituted unreported taxable income in 1938. Issue No. 4 Statute of Limitations - 1938 Petitioner's 1938 return reported gross income in the amount of $22,327. For the taxable year 1938, respondent determined that petitioner had unreported income from "Accrued salary, interest, rent" in the amount of $9,213.33. Petitioner was in receipt of additional unreported income in 1938 of $9,213.33. Petitioner omitted from gross income in 1938 an amount properly includible therein which is in excess of 25 per cent of the gross income stated in his 1938 return. The statute of limitations does not bar assessment of the deficiency and addition to tax for 1938. Issue No. 5 Unexplained Credits to Drawing Accounts 1940, 1941, 1942 In 1940, 1941 and 1942, petitioner's "Advance and Drawing Accounts" on his books for Crystal Concrete and Braintree Realty were credited with *222 various amounts. Credits totaling $5,106.26 in 1940, $10,644.85 in 1941 and $7,187.68 in 1942 were unexplained. Petitioner concedes that none of these unexplained credits was received from any source other than one or more of his business enterprises. Respondent determined that these unexplained credits constituted unreported taxable income in 1940, 1941, and 1942, respectively. Issue No. 6 Travel and Entertainment - 1940, 1941 In 1940, petitioner went to Milwaukee, Wisconsin and Columbus, Ohio for the purpose of purchasing machinery and construction equipment for his business. He traveled to, and entertained, customers such as contractors, and officials of municipalities, counties and states. On the books of Crystal Concrete under date of November 8, 1940, an amount of $2,250 was credited to petitioner's drawing account and debited to an expense account, with the explanation that this item was for money estimated to be paid out of petitioner's personal funds for travel and entertainment. In 1941, petitioner traveled to various concrete plants in Philadelphia and New York for the purpose of looking over their methods and operations. In 1941, an amount of $1,500 was *223 credited to petitioner's drawing account on the books of Crystal Concrete. This item was identified as estimated traveling expenses. Petitioner claimed the respective amounts of $2,250 and $1,500 as deductions on his 1940 and 1941 returns. Respondent disallowed these deductions. In 1940 and 1941, petitioner expended the respective amounts of $500 and $350 for travel and entertainment which constituted ordinary and necessary trade or business expenses for those years. Issue No. 7 Construction Contract - 1940 In 1934, petitioner entered into a contract with the Public Works Administration to erect a filter plant in Weymouth, Massachusetts. Under this contract he received the following payments: Year
Amount
1934
$ 1,905.70
1935
59,752.70
1936
7,440.69
1940
13,230.36
Respondent determined that petitioner realized additional income of $9,009.46 for the taxable year 1940. Such amount was computed as follows (in even dollars): Total receipts
$80,329
Less total costs
71,320
Total
$ 9,009
Petitioner's total cost under this contract was $83,878.80. The stipulated fact that the total amount received was $80,329.54 is apparently in error. *224 Even employing the payment figure of $82,329.45, petitioner realized a net loss from this contract. Issue No. 8 Miscellaneous Expenses ($778.10 - 1940) In 1940, petitioner expended $100 for a steel file, $118 for land surveys and $575 for a new automobile for one of his salesmen. The $575 represented the trade-in difference between the salesman's old automobile and the price of the new one. Respondent disallowed the following items claimed by petitioner as deductions on his 1940 return: Selling expenses
$575.00
Prior year's taxes
45.10
Expenditures for steel file
100.00
Fee for land survey, charged to
general administrative expense
118.00
Total *
$778.10
The amounts of $100, $118 and $575, which petitioner expended in 1940, were capital expenditures and not ordinary and necessary trade or business expenses for that year. Issue No. 9 Salesman's Expenses - 1940 Petitioner's return for 1940 reported a deduction for selling expenses in the amount of $1,081.54 which respondent disallowed. This adjustment was not assigned as error. Issue No. 10 Personal *225 Expenses - 1940, 1941 Petitioner's returns for 1940 and 1941 reported as deductions all expenses incurred with respect to the "Fogg" building. Of such expenses respondent disallowed $1,191.81 for the year 1940 and $600 for the year 1941. These adjustments were not assigned as error. Issue No. 11 Attorney's Receipt of Law Suit Damages - 1941 On May 8, 1936, petitioner as lessor entered into a lease with the town of Braintree, Massachusetts. Subsequently, petitioner sued the town of Braintree for damages suffered under the lease. Ralph B. Heaven acted as petitioner's attorney in this proceeding. On September 3, 1941, the suit was settled. The town of Braintree drew a check in the amount of $5,963.41 payable to Crystal Concrete or the attorney and delivered it to the latter. On September 6, 1941, the attorney endorsed the check and deposited it in a bank. On occasion petitioner unsuccessfully requested from the attorney the amount of $5,963.41. The attorney, who in the interim had closed down his law practice, promised to pay it to petitioner. Shortly after September 6, 1941, the attorney died. Petitioner never received payment of the $5,963 $41 and neither his books *226 nor 1941 return reflected the receipt of such amount. Respondent determined that the $5,963.41 constituted taxable income to petitioner in the year 1941. Issue No. 12 Legal Expenses - 1940, 1941, 1942 On his 1940 return, petitioner claimed as deductions for legal expenses the following items: 2/ 5/40
P. J. Williams
$182.35
2/ 6/40
W. J. Holdbrock
125.00
4/25/40
Ben Levy
15.00
5/ 1/40
John B. Smith
6.00
7/20/40
3.00
8/ 1/40
Monthly charge G.T.C.
.80
12/31/40
Credit to petitioner
68.81
Total
$400.96 Respondent disallowed these deductions. This adjustment was not assigned as error. On his 1941 return, petitioner claimed as deductions for legal expenses the following items: 12/27/41
Frank Ness
$ 450
12/31/41
Frank Ness
900
12/31/41
Frank Ness
450
2/24/41
McKay
500
Total
$2,300 Respondent disallowed these deductions. This adjustment was not assigned as error. In 1942, petitioner, in the operation of his businesses, required the services of attorneys. On his 1942 return, petitioner claimed the amount of $2,777.35 as a deduction for legal expenses pertaining to his Braintree Realty operations. In *227 addition, petitioner claimed as an expense deduction on his 1942 return the amount of $650 which represented a debit to legal expense and credit to reserve for legal expense on the books of Crystal Concrete under date of December 31, 1942. This entry was made "to provide for payment of legal fees to Edward Dangel, Esq., at a later date." Respondent disallowed the claimed deductions for $2,777.35 and $650. $750 of the $2,777.35 claimed as a deduction was expended for legal services in 1942 and constituted ordinary and necessary trade or business expenses for that year. The amount of $650 claimed as a deduction on petitioner's 1942 return does not constitute an ordinary and necessary trade or business expense for that year. Issue No. 13 Abandonment Losses - 1942 Ryder, Terrel, Richard Lots; South Braintree Plant From 1929 through 1942, petitioner was engaged in the business of preparing and selling ready-mixed concrete. In 1940, petitioner owned two concrete plants located at Massachusetts Avenue, Boston, Massachusetts, and Main Street, Braintree, Massachusetts. Petitioner's employees investigated and tested 167 acres of land, hereafter called the Ryder lot, at Granite *228 Street, Braintree, Mass. The land was rough and hilly, and had a dense growth of trees and brush. Petitioner estimated the Ryder lot to have 10 million cubic yards of sand and gravel. In 1939, petitioner, through his Braintree Realty operations, purchased the Ryder lot at a price of $23,548.76. In addition, petitioner purchased the following land: Name
Cost
Terrel lot, Winter St., Weymouth, Mass $360
Richard lot, Winter St., Weymouth, Mass.
200
Shortly after the purchase of the Ryder lot, he acquired a right of way over other property in order to make the Ryder lot more accessible to Granite Street. In 1940, petitioner built a 1200-foot road from Granite Street into the Ryder lot and a tunnel plant on the land for purposes of washing, crushing and screening gravel. In 1940, petitioner extracted 25,000 to 40,000 cubic yards of material from the Ryder lot in order to build the 1200-foot road. Sometime in 1942, petitioner discovered that the Ryder lot did not contain the quantity of sand and gravel originally determined. He contemplated closing down the concrete plant and selling the equipment. In December 1942, petitioner closed down the concrete plant *229 on the Ryder lot. During 1940 and 1941, sand and gravel were removed from the Ryder, Terrel and Richard lots for the purpose of manufacturing cement mix for sale to customers in petitioner's trade or business. Petitioner does not have records from which an accurate determination of the amount of sand and gravel removed during 1940 and 1941 can be made. Petitioner determined the salvage value of the Ryder, Terrel and Richard lots to be $1,002 and claimed $23,106.76 as an abandonment loss on his 1942 return. Respondent disallowed this abandonment loss and allowed petitioner depletion deductions for the years 1940 and 1941 in the respective amounts of $10,629.11 and $12,477.65. In 1942, petitioner owned the following properties: Rice & Hutchins land, So. Braintree, Mass. W. B. Babbit and B. & C. Wandelon, So. Braintree, Mass. Main and Winter Street, Braintree, Mass.
These properties will hereafter be called the South Braintree Plant. In 1942, petitioner ceased doing business on the South Braintree Plant. He removed all the material that could be used in his business operations. Petitioner did not claim depletion deductions on his returns for prior years with respect *230 to the South Braintree Plant. On his 1942 return petitioner claimed an abandonment loss of $8,750 for the South Braintree Plant. Respondent disallowed the claimed deduction. Issue No. 14 Miscellaneous Purchases - 1942 (Pantano Farm) During 1942, petitioner contracted to sell loam to the city of Boston, Massachusetts. For purposes of this contract petitioner purchased approximately 28 acres of land, known as the Pantano Farm for $21,800. The Pantano Farm was on low land. It was approximately 1-2 feet above the Quincy, Massachusetts, reservoir. Petitioner stripped the top soil or loam of the Pantano Farm and sold it to the city of Boston. The proceeds were reported as sales by Crystal Concrete. In 1942, petitioner ceased doing business on the Pantano Farm. Crystal Concrete's books on December 31, 1942 reflected the $21,800 Pantano Farm purchase as a debit to miscellaneous materials purchased and a credit to the land account. Petitioner claimed the entire purchase price as a deduction on his 1942 return. In 1943, petitioner sold the Pantano Farm for $10,000 and reported this amount on his 1943 return as a long-term capital gain. For the taxable year 1942, respondent *231 disallowed $10,000 of the $21,800 claimed deduction and allowed $11,800 as a depletion deduction. The purchase of the Pantano Farm was not an ordinary and necessary business expense in 1942. Issue No. 15 Obsolescence - 1942 On his 1942 return, petitioner claimed a deduction for obsolescence in the amount of $4,843.88. Of this claimed deduction, respondent disallowed $3,387.91, which amount consisted of items totaling $169 and $3,218.91. Issue No. 16 Constructive Dividend - 1943 In 1943, C. Healy and Co., a Massachusetts corporation, and hereafter called Healy, constructed a wing on property owned by petitioner. The cost of this construction, $3,166.46, was charged to expense on Healy's books. At the time of this construction petitioner was the sole stockholder of Healy. On December 31, 1946, the following was entered on the books of Thomas H. Hannaford, d/b/a Braintree Realty Company: Dr.
Cr.
Buildings (1943)
$3,166.46
Res. Depr. Bldgs.
$ 253.32
T.H.H. [petitioner] Capital
2,913.14
Respondent determined that petitioner realized dividend income of $3,166.46 from Healy in 1943. In 1943, petitioner received a constructive dividend *232 from Healy in the amount of $3,166.46. Issue No. 17 Depreciation - 1940, 1942, 1943, 1946, 1947, 1948 Petitioner's returns reported, for the respective years, the following amounts of depreciation deductions: Amount of depreci-
Year of
action deduction
return
claimed
1940
$38,054.04
1942
54,355.01
1943
26,792.60
1946
9,874.64
1947
9,994.90
1948
10,297.26
Respondent disallowed certain amounts of the depreciation deductions claimed by petitioner on his returns as follows: Amount of depreci-
Year of
action deduction
return
disallowed
1940
$ 699.99
1942
2,150.00
1943
3,423.62
1946
2,116.53
1947
1,296.10
1948
1,489.78
Issue No. 18 Sale of Assets - 1940, 1942, 1943 Petitioner's return for 1940 reported a loss of $6,912.16 from the sale of business assets. Respondent determined that petitioner received income from the sale of business assets in the amount of $7,766.73, as follows: Gain derived from sale of assets
$ 854.57
Loss disallowed from sale of assets
6,912.16
Total
$7,766.73
Petitioner's return for 1942 reported a net loss of $1,000 from the sale of capital assets. Respondent *233 determined that petitioner received a capital gain in the amount of $2,233.79, as follows: Long-term capital gain - 50%
$1,233.79
Disallowed loss reported on return
1,000.00
Total
$2,233.79
Petitioner's return for 1943 reported a net gain of $52,922.81 from the sale of capital assets. Respondent determined that petitioner received an additional capital gain in the amount of $468.52. This adjustment was not assigned as error. Issue No. 19 Loss on Sale of Securities - 1948 On his 1948 return, petitioner reported a capital loss in the amount of $3,481.62 for certain securities sold on December 30, 1948. Respondent disallowed this loss for the reason that such "sale * * * was not consummated until January 4, 1949." Issue No. 20 Reduction in Basis of Securities Sold - 1948 Respondent reduced petitioner's cost of certain stock sold in 1948 in the amount of $848.62. Issue No. 21 Additions to Tax - Sec. 293(a) 1938, 1940, 1941, 1943 Respondent determined additions to tax pursuant to section 293(a), Revenue Act of 1938, and section 293(a), I.R.C. 1939, as follows: 1938
$1,039.87
1940
641.61
1941
243.11
1943
2,570.09 These determinations *234 were not assigned as error. Part of each deficiency for 1938, 1940, 1941 and 1943 is due to negligence or intentional disregard of rules and regulations. Opinion Petitioner lists 15 and respondent 16 separate issues. All are not duplications, and by attempting to set the one alongside the other we conclude that there are - according to the parties - 21 issues which they say we are required to decide. [1]
The totally inadequate, not to say emotional, manner in which this confused and complicated controversy has been pleaded, presented and briefed has required us to devote an inordinate amount of time and effort in an attempt to clarify the issues described, to attempt to isolate and decide on the voluminous and obscure record those which remain for decision. In order to endeavor to bring some order out of the chaotic mass before us, we first list and enumerate the non-duplicating issues appearing to be urged or suggested in some form by the parties: Issue No. 1 - Corporate liquidations - longterm capital gain - (1938 - $75,221) Issue No. 2 - Corporate liquidations - ordinary *235 income - (1938 - $14,814) Issue No. 3 - Bank deposits - (1938 - $10,553) Issue No. 4 - Statute of limitations (1938) Issue No. 5 - Credits to drawing accounts - (1940 - $5,106; 1941 - $10,644; 1942 - $7,187) Issue No. 6 - Travel and entertainment - (1940 - $2,250; 1941 - $1,500) Issue No. 7 - Profit from construction contract - (1940 - $9,009) Issue No. 8 - Deductions for selling expenses, prior year's taxes, steel file and fee for land survey - (1940 - $778) Issue No. 9 - Salesman's expenses - (1940 - $1,081) Issue No. 10 - Personal expenses - (1940 - $1,191; 1941 - $600) Issue No. 11 - Amount received by attorney upon settlement of law suit - (1941 - $5,963) Issue No. 12 - Legal expenses - ((a) 1940 - $400; (b) 1941 - $2,300; (c) 1942 - $2,777;(d) 1942 - $650) Issue No. 13 - Abandonment loss - Ryder, Terrel and Rchard lots - (1942 - $23,106); Abandonment loss - South Braintree Plant - (1942 - $8,750) Issue No. 14 - Miscellaneous purchases - Pantano Farm - (1942 - $21,800) Issue No. 15 - Obsolescence - (1942 - $169; 1942 - $3,218) Issue No. 16 - Constructive dividend - (1943 - $3,166) Issue No. 17 - Depreciation - (1940 - $699; 1942 - $2,150; 1943 - $3,423; *236 1946 - $1,113; 1946 - $1,003; 1947 -$7; 1947 - $1,288; 1948 - $1,489) Issue No. 18 - Computation of gain on sale of assets - ((a) 1940 - $7,766; (b) 1942 - $2,233; (c) 1943 -$468) Issue No. 19 - Loss on sale of securities - (1948 - $3,481) Issue No. 20 - Reduction in basis of stock - (1948 - $848) Issue No. 21 - Addition to tax - Sec. 293(a) - (1938, 1940, 1941, 1943) As we discuss these questions we shall refer to them by the foregoing numerical designations. Many of these issues are entirely factual and have been primarily disposed of in our findings. This applies among others to traveling and entertainment expense for 1940 and 1941 (No. 6) and legal expense of $2,777 for 1942 (No. 12(c)) where we have made the best estimate available from the record, Cohan v. Commissioner, (C.A. 2) 39 F. 2d 540, and to the additions to tax for negligence (No. 21). To some extent our conclusions follow from the inadequate, vague, evasive, and sometimes conflicting evidence introduced on behalf of petitioner and to the consequent failure on his part to sustain his burden of overcoming the presumption of correctness attaching to the determination. Petitioner's repeated attempts *237 to shift the burden to respondent [2] do not convince us that this obligation can thereby be escaped. The statute of limitations issue (No. 4) must be disposed of in respondent's favor. For 1938, the *238 only year involved, respondent made 5 adjustments to petitioner's net income. One was the disallowance of a deduction; the other 4, additions to gross income. Of these, 3 are contested, having been assigned as error in the petition. (Nos. 1, 2 and 3.) The remaining item, accrued salary, interest and rent, in the amount of $9,213 was not raised as an issue and must be regarded as having been conceded by petitioner. That one item is alone sufficient to require the conclusion that more than 25 per cent of petitioner's gross income was omitted from the 1938 return. [3] Sec. 275(c), Revenue Act of 1938. It is true that respondent, for some undisclosed reason, makes no reference to this situation in his brief. But the facts seem to us inescapable, nevertheless. Petitioner's gain in 1938 on the liquidation of two corporations, Crystal and Braintree, as well as ordinary income items (see Harriet Aldrich, 1 T.C. 602) determined by respondent to have been collected by him from them in that year (Nos. 1 and 2), must be disposed of in respondent's favor. Factually there is no reliable evidence that *239 tends to overcome the presumption of correctness of the deficiency. And as a matter of law, petitioner evidently intended to, and did liquidate the corporations at the end of 1938 and not in 1939 as he now contends. This is borne out, not only by petitioner's statement under oath soon after the event, but also by his apparent failure to report the income for 1939, either. Cook v. United States, (Ct. Cl. 1933) 3 F. Supp. 47, held only that taking over assets after the close of the year created a liquidation in the subsequent period. Those were not the facts here. And subsequent dissolution (in 1939) would not be inconsistent with prior liquidation (in 1938). Edward S. Harkness, 31 B.T.A. 1100, 1106. Petitioner also contends that the basis determined by respondent for the stock of each of the corporations is too low. As to this, as well, there is no reliable evidence. The items claimed as deductions for 1940 as miscellaneous expenses (No. 8) are practically all capital items, [4] such as the purchase of a salesman's automobile, and a steel file, and the cost of a land survey. As such they may not be deducted currently. And if any small amount is allowable *240 as depreciation, this issue has not been raised, and in any event we are not in possession of sufficient facts to determine what that is. As to the item of $5,963 for 1941 which respondent contends petitioner should have included (No. 11), it is undisputed that petitioner never received these funds and that they were obtained by his attorney by means of a check delivered to the latter made payable in the alternative to the attorney and as to which presumably he would have had a lien for his fee. Under these circumstances, we cannot distinguish the case from A. L. Voyer, 4 B.T.A. 1192, in which the headnote reads: "Payments made to an attorney for his client, and retained in part by the attorney to secure payment of his fees and disbursements, are taxable income to the client on a cash basis in the [subsequent] year in which paid over by the attorney." In this case, as we have said, no such payment ever took place. Frank E. Best, 26 B.T.A. 1070, is distinguishable from the present case on the same ground that it distinguished the Voyer *241 case. There we said (p. 1077): "We held in that [Voyer] case that both parties had a claim to the amount retained by the agent and that the taxpayer had no right to receive the full amount, and since it was not known exactly how much he would receive, he was taxable on only the amount actually received from the agent in the taxable year. In the instant case the instrument creating the agency provides that the agent shall retain the proceeds as a loan. It was a voluntary act on the part of the petitioner, and the agent retained the proceeds with the consent of the principal." See also J. E. Farrell, 45 B.T.A. 162, 172, affd. (C.A. 5) 134 F. 2d 193, certiorari denied 320 U.S. 745. On this issue the deficiency is disapproved. Several other questions, although discussed by the parties on brief, do not appear to us to have been properly raised as issues. Under Rule 7(c)(4)(B)4, Tax Court Rules of Practice, the petition is required to contain "[clear] and concise assignments of each and every error which the petitioner alleges to have been committed by the Commissioner in the determination of the deficiency." As to salesman's expenses (No. *242 9), legal expenses for 1940 and 1941 (No. 12(a) and (b)), personal expenses (No. 10), and gain on sale of assets for 1943 (No. 18(c)), as well as the additions to tax (No. 21) to which we have already referred, we find no such assignment of error in the petition as would place these items properly in controversy. We accordingly find it unnecessary to consider them further. H. D. & J. K. Crosswell, Inc., 6 B.T.A. 1315, 1320; F. P. Dastague, 19 B.T.A. 1324, 1327; Samuel E. Hirsch, 16 T.C. 1275, 1279; Lynne Gregg, 18 T.C. 291, 303, affirmed per curiam (C.A. 3) 203 F. 2d 954. In addition to the issues already mentioned, we are unable to obtain from the record any facts respecting a number of other disputed items upon which we could possibly make findings adequate to sustain petitioner's burden. This applies to unexplained bank deposits (No. 3), credits to drawing accounts (No. 5), to gain on sale of assets for 1940 and 1942 (No. 18(a) and (b)), and to deductions for obsolescence (No. 15). This is also true as to the depreciation question running through a number of years (No. 17) where there is not even any possibility *243 of applying the Cohan formula, since, with one minor exception, [5] in each relevant year some allowance for depreciation was given petitioner; and to the constructive dividend (No. 16) where the only facts before us are those stipulated and an unexplained book entry, and these are at least as consistent with the correctness of the deficiency as the reverse. In a sense the same consideration also applies to legal expense of $650 for 1942 (No. 12(d)) although apparently even petitioner now concedes that the item in question was not paid in cash in that year and should not have been deducted by petitioner as a cash basis taxpayer. The profit on the construction contract in 1940 (No. 7) raises the question whether petitioner's cost of completing a contract with the Public Works Administration, for which he received a final payment in 1940, was greater than the total amount he received so that there was no profit to be reported. Petitioner's testimony as to this cost was, if not precise and categorical, at least some evidence. It was not weakened by any inherent contradiction or qualified by cross-examination. It appears in fact *244 to be supported by a stipulated exhibit which is said by the parties to be "self-explanatory." We conclude as to this issue that respondent's determination was erroneous. As to the deductions covering the alleged abandonment in 1942 of the South Braintree properties and the Ryder lots (No. 13), the only specific evidence relates to the latter. We have found on the record as a whole that petitioner extracted sand and gravel in 1940 and 1941 from the Ryder lots for the purpose of manufacturing cement mix for sale to customers in his concrete business. We have no way of knowing how much it was. There is nothing to demonstrate that respondent's allowance for depletion was erroneous. That being so, there was no basis to recover in 1942 even if the property was abandoned in that year. An identical conclusion applies to the South Braintree properties, there being no evidence as to cost basis, adjusted basis and amounts removed in prior years as well as in 1942. As to the Pantano Farm (No. 14), while it is true that petitioner used it for removing a part of the realty, the evidence is lacking that it was either completely worthless or abandoned in that year, and the implication is to the *245 contrary because almost immediately, in the following year, it was sold. We cannot conclude that petitioner was entitled to any more depletion in 1942 than respondent finally gave him. The remaining basis was consequently left to be recovered when he sold the property in 1943. As a matter of fact, petitioner is not materially worse off with this determination as he reported the gain on such sale in 1943 using a zero basis. In effect, the present result has given him the benefit of eliminating the gain in 1943 since his remaining basis is exactly equal to what he received; and as we understand it respondent has reduced the 1943 gross income accordingly. This disposes of all the questions that we regard as being still in controversy. No mention is of course made of matters not argued in petitioner's brief, which we must hence regard as having been abandoned, such as the reduction in basis of certain stock sold in 1948 (No. 20), nor of several other adjustments not in issue because not assigned as error in the petition. In addition, as we have said, either by stipulation or on brief there have been specific concessions [6] by both parties, the latter consisting particularly of the loss *246 on the sale of securities sold in 1948 (No. 19). We have not attempted to consider the numerous portions of the determination in which respondent reduced petitioner's net income either by determining additional deductions or by eliminating items of gross income, since there is no reason for petitioner to object to such adjustments in his favor. Decision will be entered under Rule 50. Footnotes
*. In his brief petitioner concedes the amount determined by respondent.↩
*. The correct addition of these items is $838.10. The discrepancy is unexplained.↩
1. This is in addition to a number that were apparently recognized as having been conceded.↩
2. E.g., "The Commissioner has merely determined that of sums credited to the petitioner's drawing accounts for this year items totaling $5,106.26 could not be identified by him. He has not established that these credits were not reported as income among the more than $778,000.00 of gross income reported by the petitioner on his return filed for that year. "The petitioner submits that Commissioner failed to show that the balance of unidentified credits in the amount of $5,106.26 represented income which the petitioner failed to include in his tax return filed for the year 1940. "* * * "Nowhere has the Commissioner established that the petitioner has failed to report these items for tax purposes. He has merely established that these were items which the petitioner could not specifically identify. "* * * "The burden was on the Commissioner as well as on the taxpayer to adopt a method that would clearly reflect income * * * and this he failed to do." [Petitioner's brief.]↩
3. Petitioner reported $22,327 as gross income, 25 per cent of which is $5,582.↩
4. One slight item of $45.10 is referred to as "Prior year's taxes." We have no further information as to this.↩
5. An amount of $126 was disallowed in its entirety.↩
6. See footnote 1, supra.↩